JELUSICH *v.* WISCONSIN LAND & LUMBER CO.

1. APPEAL AND ERROR—CERTIORARI—DEPARTMENT OF LABOR AND INDUSTRY—EVIDENCE.

   On appeal in the nature of certiorari from department of labor and industry its award must be affirmed if there is any competent testimony supporting it.

2. MASTER AND SERVANT—INJURY TO HAND—PROXIMATE CAUSE.

   Evidence that injury to hand resulted in 50 per cent. disability for which award was made under then existing law is affirmed notwithstanding defendant's testimony disability was result of chronic arthritis *deformans* largely induced by pyorrhea (Act No. 64, Pub. Acts 1919, § 10).

3. SAME—DEPARTMENT OF LABOR AND INDUSTRY—EVIDENCE—MEDICAL TESTIMONY.

   Department of labor and industry may rely upon the testimony of employee and his witnesses in determining duration and cause of disability and is not exclusively bound by contrary medical testimony.

4. SAME — FURTHER COMPENSATION — STATUTE OF LIMITATIONS — CHANGE OF CONDITIONS.

   Claims for further compensation are not restricted by statute of limitations as to notice of injury and making of first claim as provided by 2 Comp. Laws 1929, § 8431, and may be made whenever there is a change in the physical condition of the employee subject to restriction that compensation may not be granted for period greater than 500 weeks after injury (2 Comp. Laws 1929, § 8453).

5. SAME—GENERAL STATUTE OF LIMITATIONS—BRINGING OF CLAIMS—
   AWARDS.

   The general statute of limitations does not apply to the bringing
   of claims under the workmen's compensation act but only to
   the taking of judgment upon the awards of that department
   (3 Comp. Laws 1929, § 13976).

Appeal from Department of Labor and Industry. Submitted April 24, 1934. (Docket No. 42, Calendar No. 37,188.) Decided June 4, 1934.

John Jelusich presented his claim against Wisconsin Land & Lumber Company for an accidental injury while in its employ. On petition for further compensation. Award to plaintiff. Defendant appeals. Affirmed.

*R. W. Nebel,* for plaintiff.

*Derham & Derham,* for defendant.

EDWARD M. SHARPE, J. November 22, 1923, plaintiff, while in the employ of defendant company at Hermansville, Michigan, cut the palm of his hand on a rusty nail. He made a report of the injury to the company foreman and about eight days later he went to the company doctor, who advised him to go to the hospital. He remained in the hospital in Escanaba 57 days under the care of Dr. Kitchen. An infection set in and the middle fingers of the left hand became limited in motion and were drawn in towards the palm of the hand. Later a limitation of the middle fingers of the right hand became noticeable, thereby restricting the gripping power of that hand. After plaintiff's discharge from the hospital, he returned to Hermansville and reported to the company doctor, who advised him to return to work. He worked one day and the sore on his hand opened up and he was home for two months during which time the company doctor looked after him. He then returned to work for the company cleaning bricks, but was

somewhat limited to the use of his right hand in such work. He later worked for the village of Kingsford digging a sewer, but claims that he could not have done this work if he had not been aided by two of his fellow countrymen.

The record discloses that the last time plaintiff did any work for defendant company was in February, 1926. In October, 1926, plaintiff applied to defendant company for work but did not secure any. He then went to Gladstone, Michigan, where he did odd jobs for his countrymen, enough to earn his board. At the time of the injury plaintiff was earning $19.50 per week.

December 20, 1924, plaintiff filed a claim for compensation. This matter was heard and on February 3, 1925, plaintiff was granted an award in the sum of $11.70 per week for a period of six weeks and two days from December 2, 1924. Plaintiff gave defendant a "final settlement" receipt for the amount of the award, $74.10, which was dated February 5, 1925, and was filed with the department of labor and industry but never officially approved. Nothing further seems to have been done until March 2, 1932, when plaintiff filed a petition for further compensation. Plaintiff alleges "that he has been disabled from performing useful labor excepting at odd times when the respondent company furnished him with a job; that he has been disabled more or less since the date of his accident, December 2, 1924 [November 22, 1923?]; that he is now and has been for some time past totally disabled."

Defendant answered, denying liability on the grounds that "(1) the plaintiff's claim has been adjudicated; (2) the plaintiff is suffering no disability as a result of said injury; (3) the plaintiff is not suffering further disability as a result of said injury; (4) plaintiff voluntarily signed a settlement

receipt and thereby terminated defendant's liability; (5) defendant denies that plaintiff has suffered any disability since February 2, 1925.'' On the hearing defendant was granted permission to amend its answer by pleading the general statute of limitations and the statute of limitations of the compensation act in bar of plaintiff's claim.

Hearings were held on June 14, 1932, and August 1, 1932, by the deputy commissioner and plaintiff was awarded compensation in the sum of $2.92 per week during the period of partial disability from March 1, 1930. The matter was appealed to the department of labor and industry and on February 16, 1933, plaintiff was awarded compensation at the rate of $5.85 per week from November 1, 1926, until facts and circumstances warrant a change, not to exceed 500 weeks from date of injury.

From this order defendant appeals.

On an appeal in the nature of certiorari from an award of the department of labor and industry we must affirm the award if there is any competent testimony supporting it. *King* v. *Peninsular Portland Cement Co.*, 216 Mich. 335; *Martilla* v. *Quincy Mining Co.*, 221 Mich. 525 (30 A. L. R. 1249); *Kibbey* v. *L. O. Gordon Manfg. Co.*, 260 Mich. 531; *Bjorkstrand* v. *Klagstad*, 262 Mich. 186.

The commission's award was based on a 50 per cent. disability and calculated according to the statute in effect at the time of the injury; that is, 60 per cent. of the difference between what plaintiff was able to earn at the time of the injury and what he was able to earn after the injury. Act No. 64, Pub. Acts 1919, § 10. Payments were made to begin from the date defendant company refused plaintiff work.

There is evidence in the record to support these findings of the commission. Although the testimony of physicians produced by defendant was largely

contradictory to that of plaintiff's witnesses and tended to show that plaintiff's disability was not caused from the injury but from a chronic arthritis *deformans* largely induced by pyorrhea, there is evidence from which the commission could find that plaintiff had suffered a 50 per cent. disability as a result of the injury.

Dr. S. C. Stern, witness for the plaintiff, testified in answer to a hypothetical question based on the testimony in the case:

"The likelihood is, even though this man had a tendency to develop a rheumatic condition, that this one factor of the infection seemed to have been a crucial point. The condition is chronic. It takes a short period of time to show itself up as rheumatic condition. It requires a certain amount of toxin or infection circulating in the system to produce just that condition.

"Q. Would you say that the injury, the accident of running the rusty nail in the left hand, was the cause of the present physical condition?

"A. It would certainly appear that it was a crucial point. The infection present at that time had a marked influence in bringing his present condition on.

"Q. Would you say it was the cause of his present condition?

"A. It is conceivable that it was.

"Q. What percentage of earning impairment has the plaintiff in your opinion?

"A. His left hand is certainly impaired so that he could barely grip. Right hand impaired to some extent. I would imagine that certainly the man couldn't do over 50 per cent. of his work anyway."

Dr. A. L. Swinton, another physician called by plaintiff, testified to a question based on a hypothetical statement of the facts in the case:

"Q. With that testimony, doctor, and the examination that you personally made of him, what

would you say was the cause of the present physical condition of the plaintiff?

"*A.* Most probable cause, outstanding cause, was the infection of the palm of the left hand.

"*Q.* Do you attribute the condition in the right hand to the infection that he received in the left hand?

"*A.* I do.

"*Q.* Will you tell us just how you come to that conclusion?

"*A.* These inflammatory conditions similar to the one this man is suffering with are due to infections, irritations, the system becomes saturated with the poison from any focus, no matter how remote, sometimes it involves the knees, the feet, sometimes the neck, or some other place. This infection apparently was of a serious and prolonged nature, his resistance was unable to cope with it, he remained in a condition of lowered vitality apparently for a considerable time so that other factors, such as the condition of his teeth that might gradually have developed, become a factor because of his lowered vitality from this injury. The infection traveling through his system inflamed the palm of his right hand causing a similar condition not so extensive because you haven't the wound and the scar and adhesions, but you have the same toxin, the same poison, doing the same thing, bringing about the same rheumatic condition."

The same witness also testified:

"*Q.* What degree of loss in his earning capacity has he suffered?

"*A.* I would consider the man totally disabled.

"*Q.* For how long a period back would he have been totally disabled?

"*A.* My opinion wouldn't be worth very much. I don't know how rapidly this contracture has been going on. Partial disability since the time he left the hospital, ever since the contracture started, because he couldn't use his left hand and hasn't been normal since the injury."

The commission may rely upon the testimony of plaintiff and his witnesses in determining the duration and cause of the disability. *Johnson* v. *Pearson,* 264 Mich. 319. It is not exclusively bound by medical testimony to the contrary. *Austin* v. *Howard A. Davidson, Inc.,* 246 Mich. 599.

Counsel for defendant next contend that plaintiff's claim is barred by the statute of limitations (3 Comp. Laws 1929, § 13976). The limitation within the compensation act, 2 Comp. Laws 1929, § 8431, does not apply, as it relates only to notice of the injury and the making of the first claim. Plaintiff's disability was continuous and so would not come within the two-year limitation. The statute does not provide any limitation for the making of claims for further compensation under 2 Comp. Laws 1929, § 8453. These may be made whenever there has been a change in the physical condition of the plaintiff. *Harris* v. *Castile Mining Co.,* 222 Mich. 709; *Klum* v. *Lutes-Sinclair Co.,* 236 Mich. 100; *Austin* v. *Howard A. Davidson, Inc., supra; Kibbey* v. *L. O. Gordon Manfg. Co., supra.* The only restriction upon such claims is that compensation may not be granted for a period greater than 500 weeks after the injury.

The general statute of limitations does not apply to the bringing of claims under the compensation act before the department of labor and industry but only to the taking of judgment upon the awards of that department. *Buzzn* v. *Muncey Cartage Co.,* 248 Mich. 64; *Gallup* v. *Western Board & Paper Co.,* 252 Mich. 68.

The award is affirmed, with costs to plaintiff.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred. BUSHNELL, J., did not sit.