NAPOLION *v.* NATIONAL CONCRETE METAL FORMS CORP.

1. WORKMEN'S COMPENSATION—CAUSE OF DISABILITY—EXPERT WITNESSES—FINDINGS OF DEPARTMENT.

In proceeding to recover compensation for injuries to back and left wrist when plaintiff fell a floor when forms used in construction of a concrete floor collapsed, defendant employer, insurer and department of labor and industry *held*, bound by testimony of expert neurologist as to cause of disability arising from condition of back where defendants agreed to be bound by the testimony of an expert, although the department may make its own findings on disputed testimony.

2. SAME—PURPOSE OF STATUTE.

Purpose of workmen's compensation act is to afford an employee a means of securing compensation without delay as well as to give employer full opportunity, while proofs are available, to examine into the facts upon which the claim is based and see to it that the employee secures proper treatment so as to recover from the injuries as quickly as possible (2 Comp. Laws 1929, § 8407 *et seq.*).

3. SAME—CLAIM FOR COMPENSATION—LIMITATION OF ACTIONS—COMMENCEMENT.

Six-year statute of limitations, applied to claims under workmen's compensation act by analogy to contractual causes of action, *held*, to commence at time the claim for compensation accrues, which under the act is the time when the disability arises from the injury.

4. SAME—LIMITATION OF ACTIONS—APPLICATION.

Claim for compensation for injury to back, filed within six years from time that disability appeared although more than six years after date of injury, *held*, not barred by six-year rule applied to such claims by analogy to contractual causes of action.

FEAD, C. J., and NORTH and WIEST, JJ., dissenting.

Appeal from Department of Labor and Industry. Submitted January 6, 1937. (Docket No. 21, Calendar No. 38,931.)  Decided May 21, 1937.

Ernest Napolion presented his claim for compensation against National Concrete Metal Forms Corporation, employer, and Maryland Casualty Company, insurer, for personal injuries sustained in defendant's employ.  Award denied.  Plaintiff appeals.  Reversed.

*Robert A. Acchione (Milman Andrews,* of counsel), for plaintiff.

*Mason, Davidson & Mansfield,* for defendants.

BUTZEL, J.  On June 7, 1928, while Ernest Napolion was working for the National Concrete Metal Forms Corporation, floor forms used in the construction of a concrete floor in the Union Guardian Building, Detroit, collapsed.  Plaintiff with several others fell a distance of from 13 to 16 feet onto the steel reinforcing rods or mesh of the floor below. Plaintiff claims that, in addition to spraining his left wrist, he wrenched his back so that it resulted in a hemorrhage of the spinal cord and he thus became permanently disabled.  Immediately after the accident, he was taken by defendant's superintendent, under whose supervision he worked, to the first aid room of the main contractor from whom plaintiff's employer held a subcontract.  Plaintiff's wrist was bound up and he continued to work during the day. As he still complained the following day, he was taken by the foreman to a doctor employed by defendants.  Plaintiff claims that he complained of the pains in his back as well as in his wrist.  An X-ray

picture was taken of the swollen wrist. The doctor felt the back, but evidently thought little of the injury for he prescribed no treatment for the back and permitted plaintiff to return to work. Plaintiff continued to work with but few interruptions for approximately seven months after the accident. The employer filed a noncompensable report on July 11, 1928, stating therein that the nature of the injury was a sprained wrist; that plaintiff lost no time, but returned to work the same day. Plaintiff claims that the disability from the injury to his back became progressively worse, forcing him to slow down in his work so that he was finally discharged the fore part of January of the following year. He testified that he had continuous pains in the back after the accident and that he gradually became lame; that in the latter part of December, 1928, he asked his foreman or supervisor for compensation, and again the following month, but that both times the foreman merely laughed at him and walked away, and that shortly after the second request, plaintiff was discharged.

The foreman testified that plaintiff never asked for compensation and left defendant's employ in order to open a small grocery store; that the peculiarity in plaintiff's walk had existed prior to the accident. In January, 1929, the month in which plaintiff left defendant's employ, plaintiff was suffering from a very serious condition affecting his back. He was treated for eight or nine months by a physician, who testified that he believed plaintiff was suffering from myelitis, but could not state definitely whether it was caused by a fall or by syphilis; that the treatment in either case would be practically the same. The physician had not preserved his notes in regard to the case, and was somewhat indefinite

in his testimony owing to the lapse of time since the treatment. Although plaintiff became disabled in January, 1929, he did not file application for adjustment of claim until November 13, 1934. This was over six years and five months after the accident occurred, but less than six years after he became so disabled as to be unable to work and entitled to compensation. Plaintiff is an illiterate colored man. He claims he consulted attorneys in reference to filing a claim for compensation, but that he did not have the funds to pay the fees asked of him.

The deputy labor commissioner awarded plaintiff full compensation of $18 per week for total disability from January 4, 1929. Upon application for review, the department reversed the order of the deputy commissioner. A question of fact arose as to whether plaintiff immediately after the accident did not also report the injury to the back to the doctor. Plaintiff states that he told the doctor, "my arm is hurt and my back. I fell on my left side and my back;" that the doctor examined his back, hip and arm, and ran his two thumbs down the back, but did not look at the back. The record of the doctor, to whom plaintiff was taken the day following the accident, does not show any injury to the back.

It is evident that on June 8, 1928, no importance was paid to the injury to the back by the doctors as only the sprained wrist was treated. The fact that plaintiff immediately returned and continued to work for the next six months, with only an occasional day or two off, tends to establish the correctness of the report in only describing the injury to the wrist. Plaintiff, however, claims that he continued to complain about the pain in his back to the foreman and that he asked him for compensation in December, 1928, and also the following month.

The opinion of the department is so confusing that it is difficult to reconcile various statements. It states that the report of the noncompensable accident filed by the defendant was entirely proper in form at the time it was made, and that there was no evidence that defendant had any knowledge of this being a compensable accident until November, 1934. However, the department then proceeds to discuss the testimony and states that:

"Assuming we reject the testimony of the foreman, who testified plaintiff never made any claim for compensation and accepting the testimony that he did claim compensation within six months after the accident but was refused it, we are next confronted with the situation that plaintiff has not asserted his claim or taken any steps to collect compensation within a reasonable time which the Supreme Court has definitely held must be done."

This latter statement casts doubt upon the former statement and does not base the opinion on a finding that no claim for compensation was made. The reversal of the award of the deputy commissioner is based by the department on the latter's findings as follows:

"Plaintiff's disability is not shown to be the result of the accident and secondly plaintiff's claim is barred for his failure to commence proceedings within a reasonable time, notwithstanding employer had notice and knowledge of the accident and a verbal claim had been made for compensation."

From the opinion of the department we cannot find that it disbelieved the statement of plaintiff that he made a claim for compensation immediately after the disability appeared. This leaves only two questions for our consideration.

The opinion of the department found that plaintiff's disability is not shown to have been the result of the accident. The testimony as to what caused the injury became a battle between experts. The testimony indicated without question that plaintiff had symptoms of syphilis at some time subsequent to the accident. There was testimony of a fellow workman that while still working, plaintiff carried in his pocket a sweet potato as a cure for syphilis. There is also some medical testimony that plaintiff suffered from syphilis subsequent to the accident. The testimony of a well qualified neurologist, however, who took various tests, showed that the injury to the back could not be attributed to a syphilitic condition, but was caused by trauma. The testimony that the injury was due to trauma was so strong, however, that defendants' attorneys feared it might incline the deputy commissioner to hold that way. Thereupon defendants' attorney proposed that a disinterested medical expert of undoubted authority and selected by the deputy commissioner make a further examination and that his opinion should determine the question. Plaintiff's attorney objected to the taking of further testimony on the ground that plaintiff should not be obliged to undergo further tests that were painful and stated that plaintiff would not feel himself bound by such further testimony. He, however, suggested that if they have such further examination, it be made by an expert selected by the doctors who previously testified for the respective parties. In some manner Dr. Carl D. Camp, an eminent neurologist of the University of Michigan, was selected. His testimony was taken on notice served by defendants. He made a written report and subsequently gave oral testimony.

Dr. Camp testified in clear, concise terms that the injury was due to trauma and not syphilis, and that the damage from a slight injury could become progressive and thus account for plaintiff's total disability.

In the brief filed by defendants' counsel with the deputy commissioner after Dr. Camp's findings were submitted, it is said:

"The important medical testimony and by which defendants agreed to be bound is that of that eminent neurologist, Carl D. Camp, M. D. of the University of Michigan. His testimony settled the question as to the cause of the disability."

We believe that defendants are bound by Dr. Camp's testimony and that the department could not find to the contrary when defendant admitted that the cause of disability was a closed matter and the testimony was taken with the understanding that it was to settle the issue. The department may make its own findings on disputed testimony, but when defendants agreed to be bound by the testimony of an expert, the department was without authority to make a finding to the contrary.

The department further found that the plaintiff was barred from compensation because he did not file his written application for compensation until over six years after the accident. It cited: "*Hadjuk* v. *Revere Copper & Brass, Inc.*, 268 Mich. 220; *Ardelian* v. *Ford Motor Co.*, 272 Mich. 117; *Stone* v. *Ford Motor Co.*, 272 Mich. 139 and *Henry* v. *Ford Motor Co.*, 273 Mich. 323."

The claim is made that the so-called six-year statute of limitations was not pleaded in due season before the deputy commissioner. Long prior to the

closing of the case before the department, defendant had made a motion to amend its plea to embrace the defense that plaintiff had waited until a period beyond the six-year statute of limitations before asserting his claim. While no order was granted either admitting or denying the amendment to the plea, the department unquestionably permitted such amendment in basing their opinion on such plea. In the view we take of the case, it becomes unnecessary to pass upon the department's action in allowing the amendment.

We have repeatedly stated that the purpose of the act [*] was to afford the employee a means of securing compensation without delay, as well as to give the employer full opportunity, while proofs are available, to examine into the facts upon which the claim is based and see to it that the employee secures proper treatment so as to recover from the injuries as quickly as possible. Following the purposes of the act, we have held that an unreasonable delay on the part of the employee in instituting a proceeding for compensation bars his rights thereto, and we used the analogy of the six-year statute of limitations applicable to contractual causes of action, since liability under the workmen's compensation act is itself contractual.

The question of from what time the six-year limitation should run is squarely before us. Notwithstanding some dicta in previous cases, where the time of injury was apparently considered the same as the time of disability, we hold that the six-year limitation shall begin from the time that the claim for compensation accrues, which under the compensation act is the time when the disability arises from

---

[*] See 2 Comp. Laws 1929, § 8407 et seq.—REPORTER.

the injury. Plaintiff brought his suit within six years from the time that the disability appeared and therefore is not barred by the six-year rule.

The award of the department is set aside and the award of the deputy commissioner is affirmed and the case remanded for proper entry thereof by the department. Plaintiff will recover costs.

BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred with BUTZEL, J.

WIEST, J. (*dissenting*). I cannot join in the holding that the six-year limitation is to be computed from the time when the disability arises from the injury. Such a holding, it seems to me, would effectually destroy the rule of limitation, for it is well known that some after effects may not develop for many years.

Neither do I join in the holding that the testimony by the doctor, agreed upon before the deputy, binds the department in making findings of fact, there being other evidence before the department to the contrary.

The award by the department should be affirmed.

FEAD, C. J., and NORTH, J., concurred with WIEST, J.