## BABCOCK v. GENERAL MOTORS CORPORATION.

1. WORKMEN'S COMPENSATION—INGUINAL HERNIA—ACCIDENT—FINDING OF COMMISSION—EVIDENCE.

The finding of the workmen's compensation commission that plaintiff's inguinal hernia was an accidental injury and not an occupational strain is not open to question by the Supreme Court, where based on competent proof (CL 1948, § 413.12).

2. LIMITATION OF ACTIONS—PURPOSE OF STATUTE.

The purpose of the general statute of limitations is to fix some time at which litigation concerning a subject matter must be at an end as well as to limit the possibility of fraud which arises from unreasonable delay in bringing actions or asserting claims (CL 1948, § 609.13).

3. WORKMEN'S COMPENSATION—LIMITATION OF ACTIONS.

The workmen's compensation commission is not a court and a proceeding before it to recover workmen's compensation is not

***

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Workmen's Compensation § 483; 42 Am Jur, Public Administrative Law § 211.
[2] 34 Am Jur, Limitation of Actions § 9.
[3] 58 Am Jur, Workmen's Compensation § 411.
[3] Applicability of general statute of limitations to action or proceeding under workmen's compensation acts. 16 ALR 462, 40 ALR 495.
[4–7] 58 Am Jur, Workmen's Compensation § 308 et seq.

an action, hence, the general statute of limitations has no application, but since the purpose of the workmen's compensation act is to secure a speedy and inexpensive method of adjusting compensation claims and there should be some limit of time within which a proceeding for compensation should be commenced, the general statute of limitations is applied by analogy (CL 1948, § 411.1 *et seq.;* § 609.13).

4. SAME—IMPAIRMENT OF EARNING CAPACITY—COMPUTATION.

Impairment of earning capacity is to be computed under the workmen's compensation act upon the basis of the employment at the time of injury, but the compensation payable, when added to the wage earning capacity for partial disability after the injury in the same or other employment, may not exceed the employee's average weekly earnings at the time of such injury (CL 1948, § 412.11).

5. SAME—WAGE EARNING CAPACITY.

"Wage earning capacity," as used in the workmen's compensation act, does not necessarily have reference to wages actually received (CL 1948, § 412.11).

6. SAME—WAGE EARNING CAPACITY—SUBSEQUENT EMPLOYMENT.

An employee who has sustained a reduction or stoppage of workmen's compensation by reason of subsequent employment and not by reason of recovery of physical capacity to work, need not show an actual change of physical condition in order to regain compensation nor is he prevented from showing his actual earning capacity after the employment ceases, as affected by his physical condition, his ability to work, the market for his labor and other pertinent circumstances (CL 1948, § 412.11).

7. SAME—WAGE EARNING CAPACITY—EVIDENCE.

Plaintiff factory worker who suffered an accidental inguinal hernia and was fitted with a truss and continued in employment by his employer at work which did not require heavy lifting for 9 years thereafter at higher wages, then discharged for reasons unrelated to the injury and thereafter employed for a short while by another employer, may not be said to have sustained a loss in wage earning capacity, the record showing ability to perform the work he was doing at the time of his discharge, but failing to show the reason for his discharge by the other employer or that he sought employment elsewhere (CL 1948, § 412.11).

Appeal from Workmen's Compensation Commission. Submitted April 9, 1954. (Docket No. 55, Calendar No. 45,986.) Decided June 7, 1954.

Grant Lowery Babcock filed his claim for compensation against General Motors Corporation, Oldsmobile Division, as result of inguinal hernia. Award for plaintiff. Defendant appeals. Reversed and remanded.

*Warner & Hart,* for plaintiff.

*Henry M. Hogan* (*R. V. Hackett, G. W. Gloster* and *E. H. Reynolds,* of counsel), for defendant.

Carr, J. The facts in this case are not in dispute. On November 12, 1942, plaintiff was employed by defendant in the performance of unskilled labor. While lifting a box of ammunition he slipped and sustained a right inguinal hernia. Shortly thereafter he was examined by defendant's plant physician, his condition was discovered, and he was advised to procure a truss. Plaintiff did so, and still wears the appliance.

At the suggestion of the physician, plaintiff was given work that did not involve heavy lifting. Thereafter he continued in defendant's employ until November 15, 1951, when he was discharged because of too many garnishment proceedings against him during the year, in violation of a shop rule of defendant. During the period of approximately 9 years that plaintiff continued in defendant's employ he was engaged in checking trucks for inventory purposes. Following his discharge he was employed by the Reo Motor Car Company, doing inspection work, the period of such employment being from January 30 to March 25, 1952. The reason for his discharge by Reo does not appear. It is clear,

however, that when he left the employ of the defend-
ant for the reason indicated he was able to do the
work in which he had been engaged since the accident
in 1942.  His condition did not change during such
period.

Plaintiff filed his petition for hearing and adjust-
ment of claim under the workmen's compensation
law of the State.*   Following a hearing before a
deputy of the compensation commission the applica-
tion was denied on the ground that plaintiff had
failed to make claim for benefits within the time pro-
vided by the compensation act.  On appeal the order
of the deputy was reversed and plaintiff was
awarded compensation for total disability from
November 15, 1951, until the end of the compensation
period, except for the time that he was employed by
the Reo Motor Car Company. On leave granted de-
fendant has appealed, claiming that the action of
the commission is not supported by the proofs.

On the hearing before the compensation commis-
sion plaintiff contended that he was entitled to an
award under part 7 of the workmen's compensation
law on the theory that the hernia resulted from an
occupational strain, an incident of the work that he
was engaged in doing at the time.  The commission
rejected the argument, specifically finding that "It
is an accidental hernia and not a so-called occupa-
tional disease hernia so any rights he may have to
compensation exist under part 2 of the act.  He has
no rights under part 7."  Plaintiff did not seek to
cross-appeal from the action of the commission, but
argues in his brief that the award made should have
been based on part 7.  However, the testimony taken
before the deputy commissioner clearly indicates
an accidental injury rather than an occupational

---

* PA 1912 (1st Ex Sess), No 10, as amended (CL 1929, § 8407
et seq., CL 1948, and CLS 1952, § 411.1 et seq. [Stat Ann 1950 Rev
and Stat Ann 1953 Cum Supp § 17.141 et seq.]).

strain. The finding of the commission, being based on competent proof, is not now open to question. CL 1948, § 413.12 (Stat Ann 1950 Rev § 17.186). *Graham* v. *City of Lansing,* 303 Mich 98; *Holloway* v. *Ideal Seating Co.,* 313 Mich 267.

Appellant claims that if plaintiff sustained a compensable disability such condition occurred at the time of his accident in November, 1942, and that, in consequence, the action was not seasonably brought. Reliance is placed on the general statute of limitations applicable to personal actions (CLS 1952, § 609.13 [Stat Ann 1953 Cum Supp § 27.605]) which, it is argued, should be applied by analogy to a proceeding to recover benefits under the workmen's compensation law. Attention is called to *Hajduk* v. *Revere Copper & Brass, Inc.,* 268 Mich 220, in which the claim was made nearly 10 years after the happening of an accident that resulted in the loss of an eye shortly thereafter. No report of the accident and injury was made by the employer, as required by CL 1929, § 8431.* Commenting on the situation, it was said (p 223):

"The statute of limitations referred to in section 8431 of the compensation act means the limitation within the act and not the general statute of limitations. The purpose of the general statute of limitations† is to fix some time at which litigation concerning a subject matter must be at an end as well as to limit the possibility of fraud which arises from unreasonable delay in bringing actions or asserting claims. One of the objects of the compensation act was to secure a speedy and inexpensive method of adjusting compensation claims. While the general statute of limitations has no application in the instant case because the department of labor and industry is not a court and a proceeding before it is

---

* CL 1948, § 412.15 (Stat Ann 1950 Rev § 17.165).—Reporter.
† CL 1948, § 609.13 (Stat Ann § 27.605).—Reporter.

not an action, yet we can conceive of no reason why there should not be a limit of time within which a proceeding for compensation should be commenced. That limit of time must be a reasonable one, which by analogy to the statute of limitations will be deemed to be 6 years. *Cruse v. Chicago, R. I. & P. R. Co.,* 138 Kan 117 (23 P2d 471)."

Of like import are *Henry v. Ford Motor Co.,* 273 Mich 323, and *Oado v. Ford Motor Co.,* 273 Mich 510.

Plaintiff calls attention to *Napolion v. National Concrete Metal Forms Corp.,* 279 Mich 668, suggesting that it should be regarded as modifying the holdings in the prior cases. We think the decision may be distinguished on the basis of the facts involved. Plaintiff wrenched his back while working but continued in his regular employment for approximately 7 months thereafter, when he was discharged. He made claim for compensation within 6 years from the time that the disability, resulting from the injury, actually occurred. It was held that the claim for compensation was not barred by the 6-year rule. Obviously the condition resulting from the accident was progressive in character. Such is not the situation in the case at bar. The proofs do not indicate that there was any change in plaintiff's condition from the time that he sustained the hernia in 1942 to and including the time of the hearing before the deputy commissioner.

In reaching the conclusion that plaintiff's right to compensation was not barred by the so-called 6-year rule, the commission called attention to the fact that following the accident in November, 1942, plaintiff continued in the position given him by defendant without any wage loss prior to his discharge in November, 1951. Because of this situation the commission concluded that during such period plaintiff had no cause of action for compensation, that such cause did not accrue until he was discharged. No finding

was made to the effect that because of the hernia plaintiff's disability differed in any way from what it was in 1942 and throughout the 9-year period that he continued to work for defendant following the accident.

It may be assumed that the commission in holding that plaintiff had no claim for compensation until after his discharge by defendant had reference to the language of the proviso added to part 2, § 11, of the workmen's compensation law by PA 1927, No 376,* which proviso reads as follows:

"The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury."

The scope of the proviso and the change thereby made in the prior statutory procedure were discussed by this Court in *MacDonald* v. *Great Lakes Steel Corp.,* 268 Mich 591. It was there said, in part (pp 594, 595):

"We discover in the proviso added in 1927 no intention to abolish the difference between skilled and unskilled labor pointed out in the cases cited. On the contrary, the reenactment of the body of section 11(e), in the light of the decisions, demonstrates an intention that impairment of earning capacity shall continue to be computed upon the basis of the employment at the time of the injury.

"The proviso has no effect upon the determination of the basic computation of compensation. It merely allows a sort of set-off against it. The first controlling figure in the computation is found from section 9, as to total disability, section 10 as to partial disability, and section 11(b). In both cases the start is made at the average weekly wage at the time of injury.

* See CL 1929, § 8427, amended by PA 1943, No 245, now CL 1948, § 412.11 (Stat Ann 1950 Rev § 17.161).

"The body of section 11(e) provides a method of determining the percentage or degree of impairment of earning capacity.  As construed in the *Trask Case* [*Trask* v. *Modern Pattern & Machine Co.*, 222 Mich 692], it makes changes in labor and wage conditions factors in finding the 'proportionate extent' of impairment.  It does not affect the first determination of the basic figure.  It operates merely to find the percentage to reduce it.  Where continued incapacity to work in the employment at the time of injury is total, there is no occasion for using any rule to find the percentage of impairment.  The rule in the *Trask Case* is applicable only on partial incapacity in such employment.

"Section 9 and the proviso in section 11(e) govern the rate of compensation at bar.  Under section 9 the basic rate was $16.80.  Against it the proviso allows such set-off, by reason of earning capacity in another occupation, as will restrict earning capacity plus compensation to $25.20, the average weekly earnings at time of injury."

It will be noted that the proviso in question refers to "wage earning capacity."  Obviously such expression does not necessarily have reference to wages actually received.  *Hood* v. *Wyandotte Oil & Fat Co.*, 272 Mich 190.  In *Markey* v. *S. S. Peter & Paul's Parish,* 281 Mich 292, an employee, injured in the course of his employment, received compensation under the statute.  He subsequently obtained employment as a timekeeper for a Federal agency, receiving substantially higher wages than were paid him prior to his injury.  The department of labor and industry ruled that such employment did not establish an earning capacity under the statute but that, in effect, it amounted to public relief.  This Court held otherwise, saying, in part (pp 299, 300):

"When an employee accepts work and receives wages therefor in a recognized regular employment,

with the ordinary conditions of permanency, as here, there is no room for argument that he has not thereby established a present earning capacity equal to such wages, whatever may be his physical condition. It is the intent of the quoted proviso that, while he is thus earning wages, they shall operate to reduce or eliminate the compensation award by way of a sort of set-off against it, if they are sufficient in amount. *MacDonald* v. *Great Lakes Steel Corp., supra.*

"But when, after such reduction or stopping of compensation by reason of employment and not because of a recovery of physical capacity to work, the employee seeks to have compensation restored by reason of the fact that he has lost his employment, it would be grossly unjust to require him to make a showing of actual change of physical condition. Such a ruling would discourage attempts at rehabilitation by imposing an unfair hazard thereon. In *MacDonald* v. *Great Lakes Steel Corp.,* 274 Mich 701, it was held that where a disabled employee had had employment, compensation was stopped therefor and he had lost his employment, the department would be justified in holding that the employment had established a *prima facie* earning capacity but—'the ruling does not require the employee to show a change of physical condition after his discharge. Nor does it prevent his showing his actual earning capacity after the employment ceases, as affected by his physical condition, his ability to work, the market for his labor and other pertinent circumstances.'"

Assuming that plaintiff in the case at bar established a wage earning capacity during the 9-year period following his accident, ultimately receiving higher wages than were paid him before he suffered the hernia, it cannot be said on this record that disability was established by his discharge because of the violation of a plant rule of the employer. On the hearing he testified specifically that he was able to

continue in the work that he was doing at the time of his discharge. The record indicates that there was no change in his physical condition. There is no showing of inability to obtain employment elsewhere in work of a nature similar to that in which he had been engaged for 9 years. There is nothing in the record to suggest a loss of "wage earning capacity" on his part. Actually, the contrary fact appears. As before noted, no explanation was made as to the reason for his discharge by the Reo Motor Car Company. Plaintiff did not claim that he was unable to perform his duties there as an inspector. Neither does the record show that he sought employment elsewhere. The situation is materially different from that presented in *Shaw* v. *General Motors Corporation,* 320 Mich 338.

The practical situation is that if plaintiff is regarded as having sustained disability in 1942 for which he was entitled to benefits under the compensation law, his application for such benefits was unreasonably delayed. Under such theory the rule in *Hajduk* v. *Revere Copper & Brass, Inc., supra,* applies. If his employment during the period from 1942 to November, 1951, established a wage earning capacity, as the commission apparently found, there is nothing in this record on which to predicate a finding that there has been any loss of such capacity. If it did not have that effect the conclusion follows that there was no bar to the bringing of a proceeding for compensation under the statute. Plaintiff's discharge, for the reason indicated, from employment of an ordinary type which possessed attributes of permanency and stability, may not be said to have created a compensable disability.

The proceeding is remanded to the workmen's compensation commission with directions to set aside the award in plaintiff's favor and to enter an or-

der denying compensation. Appellant may have costs.

BUSHNELL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.

BUTZEL, C. J., did not sit.