KRAMER v. CHARLEVOIX BEACH HOTEL.

WORKMEN'S COMPENSATION—LIABILITY OF INSURER—WORKING PART-
NER—REMUNERATION.

Workmen's compensation insurer of partnership was liable for
compensation to injured working partner for whom premiums
had been paid, where it appears the basic policy provided
that "the remuneration of each of its partners shall be in-
cluded at the fixed amount" which served as a basis for
prepaid premiums, the amount so fixed was the same as
provided in the workmen's compensation and employer's li-
ability manual on file with the insurance commissioner, as
required by statute, the amount was fixed without regard to
whether or not an amount more or less than that figure was
in fact earned by the insured, and the policy was drafted
by the insurer, the policy indicating compliance with pro-
visions of the amendment to the workmen's compensation act
defining employees entitled to compensation to include "work-
ing members of partnerships, receiving wages irrespective
of profits from such, including any person insured for whom
and to the extent premiums are paid based on wages, earnings
or profits" (CL 1948, § 411.7, subd 2; § 545.2, as amended
by PA 1949, No 165; § 545.4).

---

REFERENCES FOR POINTS IN HEADNOTES

58 Am Jur, Workmen's Compensation §§ 138, 146, 281 *et seq.*
Workmen's compensation: Interest in business, or in corporation
or firm owning business, as affecting right to compensation.
15 ALR 1288; 81 ALR 644.

Appeal from Workmen's Compensation Commission. Submitted January 7, 1955. (Docket No. 55, Calendar No. 46,246.) Decided June 29, 1955.

E. L. Kramer presented his claim for compensation against the Charlevoix Beach Hotel, of which organization he was a working partner, and against the Travelers Insurance Company, insurer, for injuries sustained in a fall. Award to plaintiff. Defendant insurer appeals. Affirmed.

*Pailthorp & Ance,* for plaintiff.

*Warner & Hart,* for defendant Travelers Insurance Company.

BUTZEL, J. E. L. Kramer, plaintiff, filed with the workmen's compensation commission an application for hearing and adjustment of his claim. Although the Charlevoix Beach Hotel is also made a defendant, the real defendant is the Travelers Insurance Company, referred to herein as Travelers. It resists plaintiff's claim.

In 1946, plaintiff and his wife, Irene, with their joint funds purchased the Charlevoix Beach Hotel on land contract and subsequently obtained a deed running to them as husband and wife, but subject to a mortgage which they executed as husband and wife to a local bank where they also maintained a joint bank account. On January 3, 1950, they filed an assumed-name certificate,* stating that they were conducting the business as the Charlevoix Beach Hotel. The profits or losses were to be equally divided. The entire arrangement had all the characteristics of a partnership, except for the facts that

---

* See CL 1948, § 445.1 *et seq.,* as amended by PA 1949, No 101 (CLS 1954, § 445.1 *et seq.,* Stat Ann and Stat Ann 1953 Cum Supp § 19,821 *et seq.*).—REPORTER.

the liquor license for the hotel was taken out in the name of plaintiff alone and there appeared on the hotel stationery the words "E. L. Kramer, Owner and Manager."

In 1946, plaintiff and his wife took out a workmen's compensation policy with Travelers. It was renewed from year to year, the policy in force at the time of the accident running from June 1, 1951, to June 1, 1952. On July 15, 1951, plaintiff met with a very serious accident. He fell down the stairs, struck his forehead and nose against a table and suffered, among other things, a subdural hematoma. He required hospitalization and after several weeks was removed to the University Hospital at Ann Arbor where he underwent major brain surgery. At the time of the hearing he had not yet fully recovered and was unable to return to his former duties. He filed an application for workmen's compensation which the deputy commissioner granted, and on appeal the majority of the commission awarded compensation at the rate of $26 per week for total disability from July 16, 1951, to the time of the hearing and thereafter until further order of the commission. He was also awarded a large sum for very heavy medical expenses. Travelers has appealed from the award by the commission. It offered and still offers to return to plaintiff an amount equal to all premiums paid.

While they differed on the point of law involved and hereafter discussed, all 3 commissioners found that a partnership existed between plaintiff and his wife. To support its contention to the contrary Travelers also points to the fact that plaintiff and his wife did not file a copartnership certificate. However, CL 1948, § 449.101 (Stat Ann § 20.111), clearly states that a partnership is not required to file a certificate of partnership with the county clerk if a certificate of doing business under an assumed

name is filed with him. The policy itself described the Charlevoix Beach Hotel as a copartnership. At the most it became a question of fact and we see no reason to disturb the finding of the commission. Such a finding, based on competent evidence, is conclusive in the absence of fraud. CL 1948, § 413.-12 (Stat Ann 1950 Rev § 17.186); *Babcock* v. *General Motors Corporation,* 340 Mich 58. The principal issue is one of law.

Under the workmen's compensation act, CL 1948, § 411.7, subd 2, as amended by PA 1949, No 284 (Stat Ann 1950 Rev § 17.147, subd 2), an "employee" entitled to compensation was defined as:

"Every person in the service of another, under any contract of hire express or implied, including aliens, including working members of partnerships, receiving wages irrespective of profits from such, *including any person insured for whom and to the extent premiums are paid based on wages, earnings or profits.* * * *

"*Any policy or contract of workmen's compensation insurance may, by indorsement, exclude coverage as to any 1 or more named partners. No partner so excluded shall be subject to the provisions of this act.*"

The italicized portion represents an amendment enacted as PA 1949, No 284. We are here faced with the effect of this amendment and the provisions of the policy upon plaintiff's right to compensation, in light of the established fact that he did not receive, as such, wages irrespective of profits. One of the commissioners held that as plaintiff did not receive wages irrespective of profits, he was not entitled to compensation. The majority of two, however, held that plaintiff was entitled to compensation stating that the "proofs offered show that premiums were paid for workmen's compensation insurance based upon $3,600 of plaintiff's annual earn-

ings" and therefore he was an "employee within the statutory definition." While it is true that the premiums were "based" upon what the commission held were annual earnings, the annual earnings, if any, were not shown except in plaintiff's application to the commission. Plaintiff and his wife both testified that in fact they received no wages during this entire period.

Does the 1949 amendment obviate the necessity for showing wages irrespective of profits heretofore required in order to recover? See *Thurston* v. *Detroit Asphalt & Paving Co.*, 226 Mich 505. We have held that this amendment of itself does not operate to bring an independent contractor within the act. *Scott* v. *Alsar Company*, 336 Mich 532. The words of the amendment must be given meaning. Construing the statute as it then stood and giving all of its words some meaning it must be said that working partners, whether they received wages irrespective of profits, or whether their premiums are based on "earnings or profits," were within the statutory definition and can recover unless specifically excluded from the policy by indorsement. That such was the intent of the legislature becomes clear when relevant facts are examined.

In the operation of a partnership it is difficult to tell with exactitude what the profits for the ensuing year will be. Such a determination can only be accurately made at the end of the year. Premiums on prepaid insurance, however, in the first place must be based upon a sum certain. It is therefore necessary to fix at a specific figure the amount of remuneration upon which at least a minimum premium will be based.

Attached to the basic policy were provisions applicable to those insured in Michigan. One such was the following:

"7. If this employer is a partnership, the remuneration of each of its partners shall be included at the fixed amount of $2,000 per annum and premium shall be paid thereon unless such partner is designated in the declarations or by indorsement as excluded."

Effective June 1, 1951, the figure of $3,600 was substituted for the $2,000. Plaintiff paid premiums based on these figures for the 5 or so years that he thought he was insured. In addition the policy provided:

"2. The premium is based upon the entire remuneration earned, during the policy period, by all employees of this employer engaged in the business operations covered by the policy."

These stipulations and figures were not arrived at out of thin air. The provisions of the insurance code, made specifically applicable to workmen's compensation insurance,* require insurers, either individually or through rating bureaus, to file "every manual of classifications, every manual of rules and rates," et cetera, with the insurance commissioner. CL 1948, § 545.4 (Stat Ann 1953 Cum Supp § 24.567[4]). It is further provided in that same section that every filing "shall indicate the character and extent of the coverage contemplated." Michigan Amended Rule 7 of section 13 of the workmen's compensation and employer's liability manual on file with the insurance commissioner provides as follows:

"(7) Copartnerships. Where an employer is a copartnership all partners are covered by the policy except the partners who are specifically excluded by indorsement of the policy. The payroll of each partner not specifically excluded, for the purposes of pre-

* See CL 1948, § 545.2, as amended by PA 1949, No 165 (CLS 1954, § 545.2, Stat Ann 1953 Cum Supp § 24.567[2]).—Reporter.

mium computation, shall be the fixed amount of $3,600 per annum."

The Travelers must have adopted this rule, for not only is their above-quoted policy provision similar to it, but also paragraph 7 of the basic policy itself herein involved refers specifically to the "rules of the manual of rates in use by the company upon the date of the issue of this policy."

Thus Travelers with the approval of the insurance commissioner set the remuneration earned by plaintiff and his wife at a certain figure without regard to whether or not an amount more or less than that figure was in fact earned by the insured. It drafted the policy. Its agents were in a position to know the financial condition of the Charlevoix Beach Hotel, as Hawley and Bridge, the agents who sold plaintiff the insurance, were cashier and president respectively of the bank where plaintiff did his business. Travelers accepted premiums "based" on these figures presupposed to be plaintiff's remuneration. The rule adopted and referred to by the company, to repeat, stated that "where an employer is a co-partnership all partners are covered by the policy except the partners who are specifically excluded by indorsement of the policy." Such a broad undertaking leaves no room for the defense here interposed that plaintiff is not covered because he earned no wages. The fact that the broad term "remuneration" was used rather than "wages" tends to indicate that the company was complying with the all-encompassing "wages, earnings or profits" language of the amendment.

Travelers has objected to the consideration of the manual of rules, rates and classifications filed with and accepted by the insurance commissioner on the ground that no mention of them was made at the hearing before the commission or in the briefs first

filed in this Court. However, this Court notified respective counsel to file briefs on this particular subject and they did so. We take judicial notice of these rules. This no longer becomes a question of fact, but one of law, and we see no reason to refer the case back to the commission for introduction of the manual filed as required by statute and referred to in the policy.

As a matter of practice partnerships do not generally distinguish between forms of remuneration to the partners. Money is taken out, as was done in this case, when needed, without regard to whether it actually is "wages," "earnings," or "profits." The legislature apparently enacted the amendment to broaden and conform the coverage of the act, insofar as partners are concerned, to this manner of doing business in the partnership form. To decide otherwise would be to make compensation dependent upon mere nomenclature or accounting practice rather than upon a substantive relationship. The fact that plaintiff did not earn wages irrespective of profits has now become irrelevant. The statute as we interpret it now provides coverage to a partner "for whom and to the extent that premiums are paid based on wages, earnings *or* profits" (emphasis added), as well as to the partner who earns wages irrespective of profits. The effect of the policy provisions and the rules referred to herein was to "base" the premium upon plaintiff's "remuneration." He is therefore within the statutory definition and entitled to compensation.

The award of the commission is affirmed, with costs.

BOYLES, REID, and KELLY, JJ., concurred with BUTZEL, J.

CARR, C. J., and SHARPE, and DETHMERS, JJ., concurred in the result.

SMITH, J. (*concurring*).  This case represents the problem of the compensation of the partner who is injured at his work.  More specifically, an interpretation of a recent amendment to the "employee" definition section of the workmen's compensation act (CL 1948, § 411.7, subd 2, as amended by PA 1949, No 284 [Stat Ann 1950 Rev § 17.147, subd 2]), and its application to working partners.  What we actually have in the entire area of the working partner's compensation for industrial accidents is a conflict between the conceptualism of the common law and the realities of modern social legislation.  A glance at the past will reveal its outline.

There is no need to more than mention the objectives of the workmen's compensation act.  It was born, in part at least, out of the conviction of our people that the impoverishment and tragedy of industrial accidents were a "risk of trade" which should not be shouldered exclusively by the victim of the accident and his family, but should be borne as well "by those who profit by the industry," as was cogently set forth in the messages of President Theodore Roosevelt to the Congress as early as 1906, which messages may still be studied with profit. (41 Cong Rec 22, 26; 42 Cong Rec 68, 72, 1347).  In order that such act accomplish its objectives of relieving and protecting the wage earner, it is almost universally held that it should be extended "to include all employments and services which can reasonably be said to come under its provisions" and so construed "that in a doubtful case an injured employee may not be deprived of the benefits of the act."  (*Continental Casualty Co.* v. *Haynie,* 51 Ga App 650, 652 [181 SE 126], aff'd, 182 Ga 608 [186 SE 683]).  Our own Court, in *Adkins* v. *Rives Plating Corporation,* 338 Mich 265, while noting that the compensation law was not general insurance, observed (p 271) that it was "to be construed liberally

to provide indemnity for accidents peculiarly incidental to employment."

The problem of the compensation of the partner for injuries received at his labors has been controversial for many years. See Brown, Working Partners, in Proceedings of the 13th Annual Meeting of the International Association of Industrial Accidents Boards and Commissions.* Most American jurisdictions, influenced by the English case of *Ellis* v. *Joseph Ellis & Co.* (1905), 1 KB 324, have denied recovery. The *Ellis* conclusion was reached upon the theory that if a partner were held to be a workman under the act, he would be both employer and employee, both master and servant, and that the employment relation involved 2 persons, a situation not present in the partnership cases, since the partnership, the court pointed out, as distinguished from the corporation, was not an entity. The court is thinking in terms of traditional tort law, traditional business law, the concepts of the legal "person" and the "entity" of the association in a business enterprise of a group of persons. It is a process of doubtful validity in the construction of a compensation act. As Mr. Justice Reed commented, in *United States* v. *Silk,* 331 US 704, 712 (67 S Ct 1463, 91 L ed 1757), in construing the social security act, "the terms 'employment' and 'employee' are to be construed to accomplish the purposes of the legislation. As the Federal social security legislation is an attack upon recognized evils in our national economy, a constricted interpretation of the phrasing by the courts would not comport with its purpose." See, also, the discussion by Wolfe in 41 Columbia LR 1015, Determination of Employer-Employee Relationship in Social Legislation.

With these considerations in mind, the *Ellis* conclusion is not an inevitable one, despite its wide ac-

---

* United States Bureau of Labor Statistics Bulletins, No 432, p 190 *et seq.* (1926).

ceptance.  At least one American court, unaided by statute (*Ohio Drilling Co.* v. *State Industrial Commission,* 86 Okla 139, 143 [207 P 314, 25 ALR 367]) refused to follow it.  As to the *Ellis* reasoning that the employment relation demanded 2 persons the court commented that it could "see no good reason why the members of a partnership cannot jointly or severally perform the work or labor incident to the success of the joint undertaking and at the same time draw wages from the earnings of the partnership," finally concluding, as a matter of law, that:

"The character of the business of the partnership brought them clearly within the provisions of the act, and the fact that the members of the partnership performed the labor incident to its business rather than hire other employees to perform the labor, it seems, in no way hazarded the risk of the insurance carrier or gave it any reasonable excuse for avoiding its obligation to the partnership or to the State."

We do not find it necessary, however, to test the validity of the *Ellis* conclusions against modern partnership law as found in the uniform partnership act, though the case of *DeMartini* v. *Industrial Accident Commission,* 90 Cal App2d 139 (202 P2d 828) is instructive in this respect.  In 1921 the Michigan legislature considered the problem, and by amendment (PA 1921, No 173), the definition of employee was broadened to include "working members of partnerships, receiving wages irrespective of profits from such."

Under this statute it could no longer be doubted that the working partner described became eligible for workmen's compensation.  But the difficulty with the amendment was that it pitchforked into an admittedly complex legal problem (the determination of whether or not a partnership existed, a matter of intent) the additional requirement that a partner's

"take" from the firm be wages irrespective of profits. In a small operation, such as the one in the case at bar (or, in fact, any enterprise conducted in the partnership form) after the claims of third-party creditors are met, the remainder of the money, if any, belongs to the partners. If they have designated and received a part thereof as "wages," taking the balance as profits, they are safely covered under the act. But if they take the entire remainder as profits, it is argued that they are not covered. In each case the workman has performed the same labors, as consideration for which he has received the same total sum of money, in each case the operation of the business has subjected him to exactly the same hazards, but in the one case he is protected by the act while in the other he and his family remain exposed to all of the hazards of unrecompensed industrial accidents.

Does, in truth, the language of the 1921 amendment place a premium on accounting procedures and semantics, at the expense of ready and certain compensation for industrial accidents? If so, the multitude of small partnerships throughout the State may well be assuming they have a protection which does not in fact obtain. The financial conduct of the business in the case at bar is revealing. Mrs. Kramer, we agree with our Brother, was a copartner with her husband in the Charlevoix Beach Hotel. Her funds had aided in the purchase. She worked in the office, had been hostess, clerk and stenographer. It was she who kept the books. As to the distribution of the common fund, each of the parties withdrew personal money as it was needed and was available. "If we wanted anything, we drew a check for it, if we had it in the bank and needed it." She was certain that these personal accounts were considered in dividing up the profits at the end of the year, but as to how this was done she replied: "Well,

after all, the account just goes on and on. The bills are paid out of it." Pressed for a reply on how she divided up the profits she replied:. "Well, sir, I don't know how to answer that." But she said she was certain they did not receive wages. This was how they operated:

"For instance, if you collect $50 and you have a bill of $25 that you are going to pay in order to get that $50, that leaves you $25, doesn't it? All right. Mr. Kramer might come along and take $10 for his personal, and I will take $10, and that will leave a balance of $5. All right. The $5 is left in the bank. Maybe we will have to use that $5 to buy something for the business. The money isn't drawn out at the end of every year and divided."

Thus the distributions were made, or taken. The legislative requirement that, for compensability, when Mr. Kramer "took his personal" of $10, he must have taken it as wages irrespective of profits, becomes extremely difficult, if not impossible, to apply with accuracy in this kind of an operation, with the books kept as they were. As Mrs. Kramer testified: "Well, I wouldn't say that I was a C.P.A. or anything like that, but I tried to keep the accounts accurate—as accurate as possible." There are numerous such small businesses scattered throughout the State. Their resources are slender and their hazards great, since the limited scale of the business requires, as in the case at bar, that the partners themselves perform many of the services purchased by the more prosperous concerns. We are loath to conclude that the legislature was insensitive to these considerations in the extensive amendment later to be discussed.

We have set forth these extracts from the record at some length because they illustrate the practical pitfalls, for those unversed in accounting and the law, of a wage test for a partner's compensation

coverage. This type of difficulty is not unknown elsewhere under the same statutory phraseology. In *Mary Len Mine* v. *Industrial Accident Commission,* 64 Cal App2d 153 (148 P2d 106), the California court was faced with a case in which the partnership agreement spoke freely of wages, but much of the evidence before the commission with respect thereto was in sharp conflict, one of the partners stating that (p 157) "they were to continue drawing these amounts until a profit was obtained from the mine, *if any.*" The court held, under this phase of the case, that the decedent was entitled to the benefits of the act. But in *Skodas* v. *I.A.C.,* 19 I.A.C. 113, the agreement was that the cook, Skodas, was to be paid $5 a day for cooking, plus board of the reasonable value of $1.00 per day. It was held that this sum of $35 per week "was more in the nature of a drawing account" and compensation was denied. In our case of *Thurston* v. *Detroit Asphalt & Paving Co.,* 226 Mich 505, the issue resolved by this Court was whether a certain allocation of moneys was a wage, as claimed, or a division of profits, the Court holding it was the latter.

We are not, of course, concerned with the wisdom of the legislative test for compensability. That is a matter for the legislature, not the courts. The experience of the courts, however, in construing legislation, may cast light upon the possible reasons for legislative amendments, and it is against such background that we turn to the amendment here involved.

In the 1949 session of the legislature, it was proposed in the senate (Senate Bill No 245) that section 7 of the workmen's compensation act be amended to read, in part, as follows:

"44 Every person in the service of another, under any contract of hire,

express or implied, including aliens, including working members of part-
nerships, receiving wages irrespective of profits from such, INCLUD-
ING ANY PERSON INSURED FOR WHOM AND TO THE EX-
TENT PREMIUMS ARE PAID BASED ON WAGES, EARNINGS
OR PROFITS, and also including minors, who, for the purpose of this  *  *  *
in which case only single compensation shall be paid, receive compensa-
tion double that provided elsewhere in this act."

The House, after consideration, returned* the proposed bill to the Senate with the following amendments:

"1. Amend section 7, line 45, after the second 'including,' by striking out 'working.'

"2. Amend section 7, line 46, after 'nerships' by striking out the balance of line 46, all of lines 47 and 48 down to and including 'PROFITS' in line 49 and inserting 'EXCEPT AS HEREINAFTER PROVIDED.'

"3. Amend section 7, line 55, after 'act,' by inserting a new paragraph to read as follows: 'ANY POLICY OR CONTRACT OF WORKMEN'S COMPENSATION INSURANCE MAY, BY INDORSEMENT, EXCLUDE COVERAGE AS TO ANY 1 OR MORE NAMED PARTNERS. NO PARTNER SO EXCLUDED SHALL BE SUBJECT TO THE PROVISIONS OF THIS ACT.' "

Thus the amendment, under the House view, would read as follows:

"including members of partnerships, except as hereinafter provided.  *  *  *

"Any policy or contract of workmen's compensation insurance may, by indorsement, exclude cover-

---

* 2 Senate Journal 1949, p 1176.—REPORTER.

age as to any 1 or more named partners. No partner so excluded shall be subject to the provisions of this act."

It would be well to pause for a moment at this point and examine what is proposed. The amendments, it is clear, are aimed at the problem of the compensability of a partner for injury. The House wishes to avoid entirely the wage-profit criteria we have heretofore examined, and to liberalize broadly, subject only to the proviso that there may be exclusions, in the policy, of any partner or partners.

Conference followed, as a result of which the House and Senate differences were resolved.* The House agreed to recede from its amendments 1 and 2, and the Senate from its disagreement to House amendment 3. In this spirit of compromise the final amendment in its present form was born. The tests for a partner's compensability have been changed. It will still be required that the partner in question be a working partner, as distinguished, presumably, from the limited partner, the partnership financier, the mere investor in a noncorporate enterprise. (See 45 Yale LJ 895.) We still thus retain the over-all objective of "workmen's" compensation. But although the wage-profit requirement of coverage has not been abandoned and remains for those who can qualify, it no longer stands alone. Working partners shall include, also, those who have obtained appropriate insurance which is based upon wages, earnings, or profits. No longer have we placed a premium on form or terminology over substance. No longer does the distinction between partnership wage and partnership profit, a distinction easy for the learned and the skilled, but confusing and deceptive for the many, govern compensation for injury. The law has

* 2 Senate Journal 1949, pp 1248, 1249.—REPORTER.

thus been clarified and made more certain in its application.

We are fortified in these conclusions by our previous decision on this same amendment. The contention was made in *Scott* v. *Alsar Company,* 336 Mich 532, that the amendment was broad enough in its literal terms to cover independent contractors. They were working "for" another and they had purchased insurance. A divided court rejected the argument. The amendment, then, we have decided, does not include the independent contractor. If, likewise, it does not include the working partner, it is difficult to answer on any realistic basis (in view of the above quoted history of the amendment) appellee's penetrating question:

"If the above (*i.e.,* that the working partner who has purchased insurance is covered under the act) is not the reasonable interpretation of the 1949 amendment what classes of persons are defined by the 1949 amendment to be employees that were not covered as employees before? The legislature certainly cannot be presumed to have added the amendment to cover no additional persons or for no purpose."

A subordinate question remains. The plaintiff was insured by defendant insurance company under a policy which provided (paragraph 7, Michigan workmen's compensation indorsement) in part as follows:

"If this employer is a partnership, the remuneration of each of its partners shall be included at the fixed amount of $2,000 per annum (later increased to $3,600) and premium shall be paid thereon unless such partner is designated in the declarations or by indorsement as excluded."

With respect to such policy, defendants' application for leave to appeal in the nature of certiorari states, in part, as follows:

"The policy recited that the so-called partners received a fixed salary or wage of $3,600 each per year. Premiums were paid by plaintiff and his wife on this alleged 'salary'. Investigation subsequently revealed that neither E. L. Kramer or Irene Kramer, his wife, ever drew any wages, the record being undisputed on this point. Premiums which had been collected on this nonexistent 'salary' were tendered back by Travelers Insurance Company, and were refused by the Kramers."

Insofar as the above complains of the $3,600 figure used in the policy, defendant insurance company is in no position to urge that it is erroneous. The figure of $3,600 had its origin with the defendant itself, not the plaintiff. Plaintiff could have employed no other. The language used admits of no other construction: remuneration *shall* be included at the *fixed* amount of $3,600, which is the figure upon which the premium *shall* be paid.

But we need not rest our conclusions upon such fragmentation of the language, revealing though it may be. We take judicial notice of the filings by, for and on behalf of the defendant with the commissioner of insurance of this State in accordance with PA 1947, No 99.[*] The Michigan workmen's compensation rating bureau there filed, on behalf of its member insurance companies, of which defendant Travelers Insurance Company is one, "The Basic Manual of Rules, Classification, and Rates for Workmen's Compensation and Employers' Liability Insurance," which manual contained the following general Rule 7, with specific Michigan rule not inconsistent therewith, respecting the compensation insurance of copartnerships:

---

[*] See CL 1948, § 545.1, CLS 1954, § 545.2 and CL 1948, §§ 545.3–545.20 (Stat Ann 1953 Cum Supp §§ 24.567[1]–24.567[20]).—Reporter.

"7. *Copartnerships.* The following rule is applicable in States where copartners are subject to the workmen's compensation law or where the law provides that copartners may elect to come within its scope:

"Where an employer is a copartnership, any member of which is covered by the policy, the name of any such member so covered shall be stated in the policy and assigned to the classification properly describing his employment. The payroll of each such copartner for purposes of premium computation shall be the fixed amount of $3,600 per annum."

We need not, we assume, explore the rate-making problems involved in such provision. Those interested may profit from Riesenfeld's excellent exposition (p 372 *et seq.*), in Modern Social Legislation, Riesenfeld and Maxwell; Somers and Somers, Workmen's Compensation, p 102 *et seq.*; and Kulp's "The Rate-Making Process in Property and Casualty Insurance—Goals, Technics and Limits," in 15 Law and Contemporary Problems (Autumn 1950), pp 493–522.

Not only, then, is the philosophy of the amendment obvious, but the mechanics of insurability equally so. If we have a working partner, he may procure compensation insurance. It must be *based* upon wages, earnings, or profits, but the statute does not require the actual receipt of any stated sum from the copartnership as a condition precedent to insurability under the act or the collection of insurance benefits. Whether the work is financially productive or not, his hazards remain the same. In truth, considering that one of the purposes of workmen's compensation is to keep workmen's families off the relief rolls, it may well be that the working partner in a hand-to-mouth operation has designedly received more legislative solicitude than his spectacularly successful competitor. It is clear that the in-

jured partner in this case has met the requirements of the act and should receive his compensation under it.

The award is affirmed, with costs.