CURTIS v. HAYES WHEEL CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—LOSS OF FOOT—SPECIFIC AWARD—EMPLOYEE NOT ENTITLED TO ADDITIONAL AWARD FOR DISABILITY.

Where an employee suffered the loss of a foot and was awarded the specific compensation therefor under the workmen's compensation act (2 Comp. Laws 1915, § 5440),

On amount recoverable by incapacitated employee under workmen's compensation acts, see notes in L. R. A. 1916A, 136, 254; L. R. A. 1917D, 167.

On construction and effect of workmen's compensation acts, generally, see comprehensive notes in L. R. A. 1916A, 23; L. R. A. 1917D, 89.

in the absence of a showing of any disability other than that resulting from the amputation he was not entitled to an additional award for total disability, although he had not fully recovered from the' disability caused by the loss of the foot at the expiration of the period, since the specific compensation allowed by the act for such loss is the limit of the employer's liability.

2. SAME—COMPENSATION ALLOWABLE FOR PERIOD BETWEEN ACCI-
DENT AND AMPUTATION.

   Plaintiff was properly allowed compensation for total disability from the date of the accident to the date of the amputation, in addition to the specific award for the loss of the foot.

Certiorari to Industrial Accident Board. Submitted June 11, 1920. (Docket No. 63.) Decided July 20, 1920.

Alonzo Curtis presented his claim for compensation against the Hayes Wheel Company for injuries received in defendant's employ. From an order granting a petition to reopen an award for permanent disability, defendant and the Michigan Mutual Liability Company, insurer, bring certiorari. Reversed, in part, and remanded.

*Beaumont, Smith & Harris* (*Hal. H. Smith* and *Albert E. Meder*, of counsel), for appellants.

*Charles J. DeLand,* for appellee.

SHARPE, J.   On September 7, 1916, while employed by the Hayes Wheel Company at its Jackson plant as a floor sweeper, the applicant, Alonzo Curtis, then 54 years of age, fell about 6 feet from a runway while pushing a load of sawdust. A fracture of his left leg near the ankle resulted, necessitating the amputation of his left foot between 4 and 5 inches below the knee joint, on October 20, 1916.

A compensation agreement, approved by the board,

was entered into, providing for the payment of $6.49 per week for 125 weeks. It recited that the result of the accident was "fracture of right leg above ankle, foot amputated." Pursuant to said agreement, defendants paid applicant compensation for 125 weeks. In January, 1920, applicant filed a petition with the board alleging that as—

"a result of said injury and the improper care and medical attention given him by respondents  *  *  * he is now and always has been since the time of said accident unable to do manual labor  *  *  * and he believes the fact to be that he  *  *  * always will be unable to perform manual labor of any kind,  * *  * that since said accident his health has been such that he has not worked a single day and is in fact a helpless invalid and sick man."

The board was asked to take such matter under consideration and adjudge him such further compensation as he was "in justice and in law entitled to." The defendants filed an answer denying any further liability. Depositions of the applicant and two physicians were taken and the matter submitted to the board. On March 20, 1920, it found the facts as above stated and also—

"(c) That as a result of the operation for the amputation mentioned said applicant has suffered a contraction of the muscles behind the left knee, as well as a shock to his nervous system, and that because of this condition, which is the proximate result of the accident of September 7, 1916, said applicant has been totally incapacitated for work in the employment in which he was engaged when injured, viz.: that of a common laborer, such total incapacity dating from the time of the accident, September 7, 1916, and being present on January 22, 1920, upon which date testimony was taken in the case;

"(d) That in addition to the compensation which he has already received, as for the loss of his left foot, viz.: 125 weeks, $6.49 per week, said applicant should receive compensation computed as follows:

For total disability from the date of accident to
   the date of amputation of left foot, October 20,
   1918, a period of 6 weeks, at $6.49 per week..   $38.94
And for total disability from March 14, 1919, the
   end of the period covered by the 125 weeks
   above mentioned, to January 22, 1920, a period
   of 44 5/6 weeks, at $6.49 per week..........   290.07
                                                 _____
   Making a total of............................ $329.01

—and that subsequent to January 22, 1920, during the period his condition, as a result of the accident, remains as it was on said date, said applicant should continue to receive compensation as for total disability, and as for partial disability, should he become legally entitled to compensation as for partial disability, all in accordance with the provisions of the workmen's compensation act,"

—and awarded applicant compensation in accordance with such finding.

There was no proof supporting the claim of improper care and medical attention, except such inference as might be drawn from the present condition of the limb, and no finding relative thereto was made by the board.

The claim of the defendants is thus stated:

"That portion of the board's order granting compensation subsequent to the expiration of 125 weeks is illegal, because,

"1. The agreement of October 26, 1916, is final and binding.

"2. The act itself in this case allows only 125 weeks' compensation, plus the period from the accident to the date of amputation."

We will consider these claims in the inverse order in which they are stated.

1. Broadly speaking, the claim of the applicant is that the amputation resulted in "a contraction of the muscles behind the left knee," that such condition is the proximate result of the accident of September 7th, that it wholly incapacitates him from work and that

the allowance by the board as for total incapacity is warranted. This leads to a careful consideration of the several provisions of sections 9 and 10, part 2, of the act (2 Comp. Laws 1915, §§ 5439, 5440, as amended by Act No. 64, Pub. Acts 1919). Section 9 provides for compensation in cases where the incapacity for work is total. Applicant is entitled to recover under it until the time when his foot was amputated. Thereafter his claim comes under the provisions of section 10 which specifically allows "For the loss of a foot, sixty per centum of average weekly wages during one hundred and twenty-five weeks." As soon as the amputation was performed, he became disabled by the loss of his foot. He suffered no other injury than that which resulted in the amputation. As the act provides specific compensation for the loss of a foot, we are of the opinion that all liability of defendants ceased when payment was made for the full term of 125 weeks. These specific items of compensation fixed by the act must control when no other disability than such as results from the removal of the member exists. To hold otherwise would, so far as the employer is concerned, render this provision nugatory and of no effect. Should the employee recover from the effects of the amputation in a few weeks and be able to resume his employment, the payments secured to him on account thereof are in no way affected but continue during the term fixed. To hold that when his recovery is not fully completed at the expiration of the stated term he may present a claim for further compensation under section 9, would give him an advantage not contemplated in the act. As before stated, the applicant is entitled to recover for total disability up to the time when his foot was removed and, there being no claim of disablement other than that incident to such removal, payment for 125 weeks thereafter.

Our attention is called to the following language in the report of the commission appointed under Act No. 245 of the Public Acts of 1911 to investigate and report a plan recommending legislative action to provide for compensation in such cases:

"Certainty in the amount of the compensation is of the greatest importance because any uncertainty whatever will multiply litigation. A defect of the British insurance act much criticized in Great Britain is that it does not in the end reduce litigation but rather increases it because of the uncertainty of the amounts that are to be received under its schedules by the workman."

In so far as it seemed possible, the act makes the allowance certain. The degree and duration of the disability and the weekly earnings of the injured party must be determined as matters of fact by the board. When the disability is due to the lack of a member, the act relieves the board of determining its extent and specifically fixes the period for which compensation shall be paid. Should the injured party be unable to resume his employment at the expiration of such period, he is but in the same condition as one who has received an allowance for total disability, after the maximum amount provided therefor has been paid.

The conclusion reached is but that stated by Mr. Justice Steere in *Addison* v. *W. E. Wood Co.*, 207 Mich. 319. We might have contented ourselves with a reference to that decision, but the question here presented was not therein directly involved. The case of *Limron* v. *Blair*, 181 Mich. 76, relied on by counsel for applicant, is distinguished in the *Addison Case.* If it can be said to state a rule of construction at variance with the views herein expressed, it is to that extent overruled.

2. The conclusion reached renders it unnecessary to consider the other questions presented as to the binding character of the agreement.

The order of the industrial accident board allowing compensation for total disability from the date of the accident to the date of the amputation ($38.94) is affirmed. The order providing for an allowance after the expiration of the 125 weeks is reversed. The case is remanded for such further proceedings as may be necessary.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.