AUTIO v. PROKSCH CONSTRUCTION COMPANY.

OPINION OF THE COURT.

1. WORKMEN'S COMPENSATION—RIGHTS, REMEDIES, AND PROCEDURE—
CURING DEFECTS—COURTS.

Rights, remedies, and procedure under the workmen's compensation act are such and such only as the statute provides, it being necessary that defects be cured by legislative rather than judicial pronouncements (PA 1912 [1st Ex Sess], No 10, as amended).

2. SAME—FILING OF CLAIM—LIMITATION OF ACTIONS.

The workmen's compensation act provides that claims for benefits thereunder must be filed within 6 months after occurrence of the injury, but in event of physical or mental incapacity, and where the actual injury, disability, or incapacity develops more than 6 months after injury of which employer was given notice, the claim must be filed within 3 years (CL 1948, § 411.1 et seq., as amended).

3. SAME—FILING OF CLAIM—LIMITATION OF ACTIONS—REPORT OF IN-
JURY.

The time limitation within which an employee must file a claim for workmen's compensation does not run against the injured employee or his dependents, where the employer has had timely notice or knowledge of the injury but filed no report of injury with the department (CL 1948, § 412.15).

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 58 Am Jur, Workmen's Compensation § 26 et seq.
[2, 3, 11] 58 Am Jur, Workmen's Compensation §§ 380, 409.
[5–8] 20 Am Jur 2d, Courts § 198.
[9] 5 Am Jur 2d, Appeal and Error § 1009 et seq.
[10] 20 Am Jur 2d, Courts § 194.
[12] 20 Am Jur 2d, Courts §§ 184, 186.

4. SAME—CONSTRUCTION OF STATUTES—HARDSHIP.

The Supreme Court may not, by judicial legislation, write into the workmen's compensation act a provision that the legislature has not seen fit to enact, so as to relieve the misfortune of someone in a class upon which the law may work a hardship.

5. COURTS—CONSTRUCTION OF STATUTES—LEGISLATIVE SILENCE—OVERRULING CASES.

A court may properly correct a previous error it has made as to the interpretation of a statute by overruling the earlier case or cases, unless the legislature by subsequent enactment explicitly recognizes the correctness of prior judicial construction.

6. SAME—STARE DECISIS.

The doctrine of *stare decisis* is a discretionary rather than an obstinate rule of judicial conduct and declares that appellate courts should adhere to precedent save only when consideration leads to firm conviction that the earlier decision or decisions are unjust, and that more, rather than less, injustice will flow from perpetuation of that which is found to be erroneous.

7. WORKMEN'S COMPENSATION—HAND INJURY—LIMITATION OF ACTIONS—NOTICE OF INJURY—REPORT OF INJURY—FILING OF CLAIM—OVERRULED CASES.

Employee who suffered the loss of the industrial use of his right hand as the result of a 1952 injury sustained during his employment with defendant, of which injury defendant had timely notice but failed to file an accurate report of the loss, was not disentitled to compensation for such loss by reason of the fact that his claim for compensation was not filed until June, 1961, overruling *Hajduk* v. *Revere Copper & Brass, Inc.*, 268 Mich 220, and other cases based thereon, the cause being remanded for further proceedings.

DISSENTING OPINION.

BLACK, J.

8. COURTS—CORRECTION OF ERRONEOUS PRECEDENTS—WORKMEN'S COMPENSATION—LIMITATION OF ACTIONS.

*That which may be regarded as an erroneous determination by the imposition of a period of limitation upon the filing of a claim for workmen's compensation against an employer which had had notice of an injury to the plaintiff claimant but had not filed a report, which determination was made upwards of 30 years previously, is a matter for correction by the legis-*

*lature; but if such is not to be, then by wholly prospective overrulement.*

9. COSTS—OVERRULING PRECEDENT.

*No costs are allowed in proceeding to recover workmen's compensation on a claim belatedly filed, where overruling a precedent of over 30 years' standing is involved.*

10. COURTS—PRECEDENTS.

*One decision construing an act does not approach the dignity of a well-settled interpretation.*

### DISSENTING OPINION.

### DETHMERS and KELLY, JJ.

11. WORKMEN'S COMPENSATION—PROCEEDING TO RECOVER COMPENSATION.

*A proceeding to recover workmen's compensation should be commenced under the workmen's compensation act within 6 years from the time the injury was sustained, a period not tolled by the failure of the employer to file a report of accident (CLS 1961, § 412.15).*

12. COURTS—PRECEDENTS—OVERRULED CASES.

*The overruling of cases interpreting the workmen's compensation act some 32 years after the decisions were rendered during which period the act has been before the legislature and amended many times would amount to legislation by judicial fiat.*

Appeal from Workmen's Compensation Appeal Board. Submitted June 8, 1965. (Calendar No. 9, Docket No. 51,042.) Decided April 5, 1966.

Arthur Autio presented his claim for workmen's compensation benefits against Proksch Construction Company and Liberty Mutual Insurance Company for injuries to a hand. Benefits denied by appeal board. Plaintiff appeals. Reversed and remanded.

*Wisti & Jaaskelainen* (*Sterling W. Schrock,* of counsel), for plaintiff.

Souris, J.   The workmen's compensation act[1] of this State constitutes a discrete enclave within the law.

"The workmen's compensation law is a departure, by statute, from the common law, and its procedure provisions speak all intended upon the subject. Rights, remedies, and procedure thereunder are such and such only as the statute provides.   If the statute is short of what it should contain in order to prevent injustice, the defects must be cured by future legislation and not by judicial pronouncement." *Luyk* v. *Hertel* (1928), 242 Mich 445, 447.

The act provides for limitational periods within which claims must be brought and also provides that the running of such limitational periods shall be tolled until the employer, having timely notice of the employee's injury, files a report of the injury with the workmen's compensation department within a prescribed period.[2]   Ordinarily a claim for compensation must be made within six months after the occurrence of the injury, but in the event of physical or mental incapacity to make a claim, within six months after regaining capacity.   A three-year limitational period is provided where the "actual injury, disability, or incapacity" develops more than six months after the injury of which the employer was given notice.   Consistent with the principle enunciated in *Luyk, supra,* and the time limitations contained in the act, the Court has held that the general statute of limitations[3] has no application to claims brought under the act. *Bankers Trust Co. of Detroit* v. *Tatti* (1932), 258 Mich 357, and *Jelusich*

---

[1] PA 1912 (1st Ex Sess), No 10, as amended (CL 1948 and CLS 1952, § 411.1 *et seq.,* as amended (Stat Ann 1950 Rev § 17.141 *et seq.,* as amended).

[2] See, currently, CLS 1961, § 412.15, as amended by PA 1965, No 44 (Stat Ann 1965 Cum Supp § 17.165).

[3] See, currently, CLS 1961, § 600.5801 *et seq.* (Stat Ann 1962 Rev § 27A.5801 *et seq.*).

v. *Wisconsin Land & Lumber Co.* (1934), 267 Mich 313, 319.

Notwithstanding its nominal acknowledgment that the general statute of limitations is not applicable to workmen's compensation claims, this Court in *Hajduk* v. *Revere Copper & Brass, Inc.* (1934), 268 Mich 220, nevertheless imposed judicially, by analogy, a six-year limitational period upon such claims. In that case plaintiff employee lost the sight of his left eye in October, 1922, as the result of an industrial accident. The department found that plaintiff had given defendant employer timely notice of the injury, but the latter nonetheless had failed to file a report of compensable injury. In May, 1933, a year after his discharge by defendant, plaintiff filed a claim with the department of labor and industry and was awarded compensation for loss of his eye. Defendant argued that the claim was barred by the general statute of limitations.

The Court said (p 223):

"While the general statute of limitations has no application in the instant case because the department of labor and industry is not a court and a proceeding before it is not an action, yet we can conceive of no reason why there should not be a limit of time within which a proceeding for compensation should be commenced. That limit of time must be a reasonable one, which by analogy to the statute of limitations will be deemed to be six years. *Cruse* v. *Chicago, R. I., & P. R. Co.,* 138 Kan 117 (23 P2d 471)."

Earlier in its opinion the Court had noted the above cited provision of the act which, in fact, specified "a limit of time within which a proceeding for compensation should be commenced." That limit is referred to in the act as "the statute of limitations", a reference the *Hajduk* Court expressly found meant (p 223) "the limitation within the act and

not the general statute of limitations". Moreover, the statute also expressly provided that that time limitation for claiming compensation "shall not run against the claim of the injured employee or his dependents, or in favor of either said employer or his insurer, until a report of said accident shall have been filed"[4] with the department by the employer in all cases in which the employer has been given timely notice or has knowledge of the happening of the accident. Thus, the legislature not only provided for a time limitation within which a proceeding for compensation must be commenced, a time limitation recognized by the Court in *Hajduk,* but, also, it provided for the extension of such time limitation so long as an employer with timely notice or knowledge of the happening of the accident failed, neglected, or refused to report the accident to the department.

Yet, the Court in *Hajduk* imposed upon compensation claims a limitational period in addition to that expressly provided by the act and made it absolute in the sense that the judicially imposed limitational period was not tolled by the employer's failure to file a report of the accident with the department or, apparently, for any other reason. The effect of what the Court did in *Hajduk* was to write into the act a limitation upon entitlement to compensation which the legislature, by its tolling provision, had manifested expressly an intention not to impose. If what the Court did it did "to prevent injustice", a purpose the language of the Court's opinion seems clearly to indicate it had in mind, the Court must have forgotten what it had written earlier in *Luyk* v. *Hertel, supra,* about the workmen's compensation

---

[4] "Injury" was substituted for "accident" by PA 1943, No 245. See, currently, CLS 1961, § 412.15, as amended by PA 1965, No 44 (Stat Ann 1965 Cum Supp § 17.165).

law and the respective roles of the legislature and the judiciary in connection therewith.

A majority of the Wisconsin supreme court imposed a similar limitation judicially upon the Wisconsin compensation law in *Federal Rubber Company* v. *Industrial Commission of Wisconsin* (1924), 185 Wis 299 (201 NW 261, 40 ALR 491). The persuasive dissent in that case (p 303) is applicable to *Hajduk*:

"The old law of master and servant was scrapped as social and economic obsolescence and was supplanted by a complete and comprehensive scheme for the compensation of industrial accidents. It has not been customary to resort to the old law of master and servant for analogies to aid in the construction of the workmen's compensation act because that act is based upon principles entirely incompatible with the former law. The framers of the workmen's compensation act expressly provided for two limitations. The logical inference is that they did not intend to provide any further limitations.

"I cannot but regard the decision in this case as a judicial invasion of the legislative field, and I must dissent."

If the act construed in *Hajduk* had been ambiguous or if it had omitted reference to a limitational period within which claims for compensation were to be filed, the result reached in *Hajduk* might have been justifiable in the sense that it would have been an appropriate exercise of the judicial power to construe statutory provisions, but in the face of such clear expression of legislative purpose, what the Court did in *Hajduk* was completely unjustified. The Court should have approached its task then as it did 16 years earlier when it construed the workmen's compensation law to deny the claim of an injured workman in *Cooke* v. *Holland Furnace*

*Co.* (1918), 200 Mich 192. In the *Cooke Case* the
Court said (pp 195, 196):

"We must approach this question, having full re-
gard for the fact that under the division of powers
found in the Constitution, our duty is not to enact
but to expound the law, not to legislate but to con-
strue legislation; to apply the law as we find it,
to maintain its integrity as it has been written by
a co-ordinate branch of the State government. If the
law as written works hardships in a special class of
cases the remedy lies with the branch of the govern-
ment charged with the duty of enacting laws. If
one does not protect himself and his rights under
the law as written it is his misfortune, and this Court
should not, by judicial legislation, for the purpose
of relieving that misfortune, write into the statute
a provision that the legislature has not seen fit to
enact."

The *Hajduk* Court erred not only in its invasion
of the legislature's domain, but it erred also by
citing as authority for its imposition, by analogy
to the general statute of limitations, of a six-year
limitational period within which claims for compen-
sation must be filed, the case of *Cruse* v. *Chicago, R.
I. & P. R. Co.* (1933), 138 Kan 117 (23 P2d 471).
That case is not authority for what our Court did
in *Hajduk.* The Kansas workmen's compensation
law referred to a limitational period within which
proceedings on a claim had to be begun but, unlike
our own workmen's compensation act, the Kansas
law neglected to define that period. Thus, there was
an ambiguity in the Kansas law which it was appro-
priate for the Kansas supreme court to clarify by
judicial construction and, under those circumstances,
there was justification for the Kansas court's refer-
ence to Kansas' general statute of limitations for
the purpose of defining that period. No such justi-
fication, however, existed for this Court's action in

*Hajduk,* the legislature having provided expressly not only for the limitational period but, also, for its tolling.

Unfortunately, *Hajduk* has been followed subsequently in a number of cases. While it is impossible to tell from the Court's opinion in *Hajduk* whether the Court then intended its judicially imposed limitational period to be applied to bar all compensation claims made after expiration of six years following the injury or disablement or only to bar compensation benefits which, had earlier claim been made, would have been payable prior to the six-year period preceding filing of the claim, *Hajduk* has been applied to cases presenting both situations. See, for example, *Henry* v. *Ford Motor Co.* (1935), 273 Mich 323, where the Court denied any compensation to plaintiff, who was injured in May, 1927, with resultant total disability in May, 1928, plaintiff not having filed a claim for compensation until May, 1934; and *Sweet* v. *Eddy Paper Corp.* (1942), 303 Mich 492, where the Court modified the department's award of benefits on a petition for further compensation by limiting the award to cover a period beginning no earlier than six years prior to the date of filing of the petition.[5]

---

[5] See, also, the following cases which, directly or indirectly, rely upon or construe *Hajduk* as authority either for barring all benefits because claim therefor was filed after six years following injury or disability or for barring only those benefits which otherwise would have been payable more than six years before the claim was filed: *Ardelian* v. *Ford Motor Co.* (1935), 272 Mich 117; *Stone* v. *Ford Motor Co.* (1935), 272 Mich 139; *Aiello* v. *Ford Motor Co.* (1935), 273 Mich 15; *Oado* v. *Ford Motor Co.* (1935), 273 Mich 510; *Tinney* v. *City of Grand Rapids* (1936), 274 Mich 364; *Wright* v. *Mitchell Brothers Co.* (1936), 275 Mich 591; *Hurst* v. *Ford Motor Co.* (1936), 276 Mich 405; *Napolion* v. *National Concrete Metal Forms Corp.* (1937), 279 Mich 668; *Henderson* v. *Consumers Power Co.* (1942), 301 Mich 564; *Broadnax* v. *Ford Motor Co.* (1944), 308 Mich 305; *Scalzo* v. *Family Creamery Co.* (1944), 308 Mich 587; *Tarnow* v. *Railway Express Agency* (1951), 331 Mich 558; *Babcock* v. *General Motors Corporation* (1954), 340 Mich 58.

It has been suggested that, because the legislature has reenacted the limitational section of the act after *Hajduk* was decided, without specifically disavowing the judicially imposed six-year limitational period, see PA 1943, No 245, and PA 1954, No 175, we are now precluded by the doctrine of legislative acquiescence from correcting the errors made by this Court in *Hajduk*. My views concerning the unsoundness of this doctrine were expressed in *Halfacre* v. *Paragon Bridge & Steel Co.* (1962), 368 Mich 366, and I here reaffirm those views finding them applicable to the errors committed in *Hajduk*.[6] I would overrule *Hajduk* and those cases, above cited, which have relied upon *Hajduk* insofar as they stand for the proposition that compensation claims not otherwise barred by the provisions of

---

[6] It should be noted that as early as 1935, the year following the *Hajduk* decision, at least one justice of this Court argued that if an employer with timely notice of an employee's injury failed to make report thereof, no limitational periods ran against the claim of the employee. See the separate opinions of Mr. Justice POTTER in *Ardelian* v. *Ford Motor Co.* (1935), 272 Mich 117, and *Oado* v. *Ford Motor Co.* (1935), 273 Mich 510. As late as 1959 this Court suggested, perhaps too subtly, that the judicially imposed six-year limitational period with regard to compensation claims was of questionable soundness. See *Johnson* v. *Cleveland-Cliffs Iron Company* (1959), 356 Mich 387. There defendant argued, *inter alia*, that because plaintiff's injury-induced amputation occurred in July, 1951, while claim for compensation for specific loss was not made until December, 1957, the delay of more than six years barred plaintiff's claim. The appeal board did not pass upon the question (although it was raised before it), nor did this Court, but the Court significantly commented (p 389):

"To this defense plaintiff says a number of answers suggest themselves. One of them may possess merit. It is that, in plaintiff's words, 'no report sufficient under the statute to start limitations was filed.' Plaintiff relies on the provision of the above-mentioned section of the statute that the limitation shall not start to run against the employee's claim until the employer has filed a report of the injury with the commission as required by statute."

If the Court had thought that *Hajduk* and its successors were correct, it could have seen no merit at all in plaintiff's argument, and would have affirmed the appeal board's denial of benefits on the ground that claim for compensation had been filed too late. Instead, the Court remanded the case for further consideration by the appeal board.

our workmen's compensation law are barred if not filed within six years of the date of injury or disablement or for the proposition that benefits which otherwise would have been payable had earlier claim been made are barred to the extent the benefits are for periods of disablement prior to six years from the date claim therefor was filed.

But it is not enough in this case simply to refer to my previously expressed views of the unsoundness of the doctrine of legislative acquiescence. Mr. Justice BLACK recently has embarked upon a course of selective invocation of the doctrine in its most extreme form. He does so yet again in this case of Autio. The doctrine, a pernicious evil designed to relieve a court of its duty of self-correction, has been examined and rejected by this Court before, but its current resurrection demands we perform the task once more lest our silence be construed as signifying its unanswerable validity. In the process, we shall compare Justice BLACK's present writing with that which he signed without apparent reservation in *Van Dorpel* v. *Haven-Busch Company* (1957), 350 Mich 135, and which he reindorsed in 1960 in *Wilson* v. *Doehler-Jarvis Division of National Lead Company,* 358 Mich 510, 514.

Justice BLACK now shrinks from what he characterizes as "retroactively effective overrulements of long standing, steadily accepted and unanimously mature interpretations and applications [of statutes]", but in the *Van Dorpel Case* he shared the duty of forthright, and retroactively effective, overrulement of prior judicial errors and joined, as well, in the forceful rejection of the doctrine of "legislative acquiescence" as a bar thereto. In that case the Court had before it for consideration sections 9 and 10 of part 2 of the workmen's compensation

act.[7] Appellant company claimed that the appeal board had wrongly applied section 10 in that, after payment of compensation for the period allowed under section 10 for specific loss of fingers and a leg, the board awarded further compensation for total disability under section 9. This Court referred to no less than five unanimous decisions which supported appellant's contention that the latter award was erroneous, the decisions ranging in date from 1914 to 1948.

The Court focused its attention upon one decision which it regarded as particularly in point, *Curtis v. Hayes Wheel Company* (1920), 211 Mich 260. Here are portions of the opinion subscribed by Justice BLACK:

"In his conclusion the appellant argues forcefully and at length that legislative silence and inaction for 37 years after the *Curtis Case* amounts to a tacit recognition of its soundness by which we must irrevocably be bound. Now this beguiling doctrine of legislative assent by silence possesses a certain undeniable logic and charm. Nor are we oblivious to the flattery implicit therein; double flattery, in fact; flattery both to the profound learning and wisdom of the particular supreme court which has spoken; and flattery to a presumably alert and eagerly responsive State legislature. One pictures the legislators of our various States periodically clamoring and elbowing each other in their zeal to get at the pearls of wisdom embalmed in the latest decisions and advance sheets of their respective supreme courts— and thenceforth indicating their unbounded approval by a vast and permanent silence.

"Yet there are several dark shadows in this picture. For one, it suggests a legislative passion for reading and heeding the decisions of our supreme

---

[7] CL 1948, §§ 412.9, 412.10 (Stat Ann 1947 Cum Supp §§ 17.159, 17.160). See, currently, CLS 1961, §§ 412.9, 412.10, as amended by PA 1965, No 44 (Stat Ann 1965 Cum Supp §§ 17.159, 17.160).

courts which we suspect may be scarcely borne out by the facts. For another, pushed too far such a doctrine suggests the interesting proposition that it is the legislatures which have now become the ultimate courts of last resort in our various States; that if they delay long enough to correct our errors those errors thus become both respectable and immutably frozen; and, finally, the larger and more dismal corollary that if enough people persist long enough in ignoring an injustice it thereby becomes just. We reject as both un-Christian and legally unsound the hopeless doctrine that this Court is shackled and helpless to redeem itself from its own original sin, however or by whomever long condoned." 350 Mich 135, 145, 146.

It is interesting to note that sections 9 and 10 had been jointly or severally the subject of legislative action nine times in the interval between the *Curtis* and *Van Dorpel* decisions,[8] and as the Court observed in *Van Dorpel* (p 137), "Despite occasional amendments to both sections, the basic design of each has remained substantially unchanged." Surely such evidence of "legislative acquiescence" in five unanimous interpretive decisions should have bound Justice BLACK in *Van Dorpel,* as he alleged himself to be bound in the more recent case of *Mosier* v. *Carney* (1965), 376 Mich 532, 589–591, and now alleges himself to be bound in this case of Autio, although, with persistent inconsistency, he is willing to "legislate" by overruling "unanimously mature" *Hajduk* and its progeny, but only prospectively.

Justice BLACK also now accuses this Court thusly:

"Even a legislature could not, consistent with constitutional guaranties, do what the Court has continued to do in 1965, and does now in 1966, that

---

[8] PA 1921, No 173; PA 1927, No 63; PA 1943, No 245; PA 1949, No 238; PA 1952, No 263; PA 1953, No 198; PA 1954, No 175; PA 1955, No 250; PA 1956, No 195.

is, destroy defensive rights of substance which, by
law, had become vested long before the date of the
legislative attempt."

Compare the above with what Justice BLACK em-
braced in *Van Dorpel* (pp 146–148):

"Courts throughout the land have long split over
this doctrine of legislative acquiescence by silence.
The usual arguments for recognizing it are that it
gives stability and sureness to the law; that 'rights'
thus acquired can thus only be disturbed at regular
and predictable intervals by but one branch of the
government, the legislative; and, finally, that to dis-
regard the doctrine amounts to judicial legislating.
Now we recognize that a court should not lightly
overrule an interpretation of a statute that has been
the law for 37 years, but we also see little justice
or utility in continuing to give stability or sure-
ness to an unfortunate rule of law; *nor do we under-
stand that employers or their insurance carriers
have gained any vested 'rights' in the interpretation
of this statute; nor do we think that the reinterpreta-
tion of a statute in the light of long experience with
an unfortunate interpretation constitutes judicial
legislating.* (Emphasis added.)

"This case involves an interpretation of a statute
which is silent on the precise issue involved. This
Court 37 years ago decided what it thought the cor-
rect interpretation should be. We happen to dis-
agree with that old interpretation and wish to make
a new interpretation, for the reasons herein stated.
It is suggested that we should not do this because,
whether the original interpretation was right or
wrong, inaction by the legislature since it was handed
down constitutes a sort of informal post-enactment
declaration of legislative assent thereto possessing
the binding effect of law; and that any new and
variant interpretation here and now would on that
account constitute 'judicial legislation.'

"To our mind the doctrine implicit in this kind
of reasoning constitutes a surrender of the judicial

function to a legislative body. In the final analysis the objection may fairly be stated thus: Our Court interprets a statute; whether right or wrong our decision henceforth becomes judicially immutable and we are powerless to change it; there is only 1 way it can be changed; if we are wrong we must wait for the legislature to tell us so; if by its long silence and inaction the legislature does not speak out and tell us we are wrong then it has perforce by the same token told us we are right; in any case this Court is forever fettered and powerless to re-interpret the statute in question. We have instead delegated that function to the legislature. This curious doctrine can be boiled down even more: right or wrong in the *Curtis Case,* we are helpless to change it.

"Such a doctrine is to squarely place the legislature in the position of a super supreme court. We also consider it an abdication of judicial responsibility. We reject such a doctrine flatly along with the sort of mechanistic thinking that can arrive at such an ironic impassé. This doctrine has irreverently been called the 'one shot' theory of legislative interpretation. We ourselves brand it a Rip-Van-Winkle doctrine of judicial stagnation and inertia. We happen strongly to disagree with it and in this we are not alone."

Justice BLACK currently inveighs against "judicial legislation", yet in *Van Dorpel* (p 153) he agreed completely with the following, which describes the situation now facing us with regard to the "rightful damnation of the Court's 32-year-old error [in *Hajduk*]":

"A little sense of proportion and realism in this area might not be amiss. The plain fact is that courts of last resort everywhere constantly engage in a form of 'judicial legislating' when they are confronted—as they so often are—by statutory or other provisions of ambiguous or uncertain meaning. Such

judicial interpretations often in effect add words to a statute. Must we act at our peril that we might possibly we wrong? Some judges solemnly declare that we must. Yet far from being the doctrine of humility and keeping our places that they would have it appear, is not this essentially to preach the gospel of judicial infallibility? Scarcely a term of this Court passes that all of us are not obliged to interpret unclear statutes. Occasionally we must reinterpret them. It is one of our primary functions; that's what we are here for. It is only when a judge ignores or flies in the face of a positive and unambiguous statutory enactment that he may justly be accused of judicial legislating, in the bad sense. That is not our case."[9]

But our review of Justice BLACK's views need not be confined to *Van Dorpel.* Consider *Linski* v. *Employment Security Commission* (1959), 358 Mich 239. Earlier, in 1955, in *Cassar* v. *Employment Security Commission,* 343 Mich 380, seven Justices of this Court, as against one dissenter, had interpreted section 29 of the employment security act,[10] dealing with disqualification for unemployment compensation benefits, as barring from benefits employees who were discharged after concertedly ceasing work in violation of a labor contract. In *Linski,* a majority of five, including Justice BLACK, voted to overrule *Cassar* and substitute a new interpretation of the statutory language for the one adopted therein. I note that in his present opinion Justice BLACK emphasizes the unanimity of erroneous decisions in which the legislature allegedly has acquiesced, as one of the reasons giving rise to his asserted abhorrence from overruling them. See, also, his sep-

---

[9] But, we might add, it is what the judges did do in *Hajduk.*

[10] CL 1948, § 421.29, as amended by PA 1951, No 251 (Stat Ann 1953 Cum Supp § 17.531). See, currently, CLS 1961, § 421.29, as amended by PA 1965, No 281 (Stat Ann 1965 Cum Supp § 17.531).

arate opinion in *Halfacre* v. *Paragon Bridge & Steel. Company* (1962), 368 Mich 366, 387. It would seem, however, that when, in the face of a vigorous dissent to a court's interpretation of a statute, the legislature takes no action to make the statute mean what the dissenter said it meant, logically, it should follow that the legislature is applauding and approving the interpretation given to the statutory language by the majority. Viewed at all realistically, it is much more likely that a decision to which there is a dissent would come to legislative attention than would one which is pacifically unanimous. Thus, a dissenting opinion in a case involving an erroneous statutory interpretation should reinforce one's inhibition against its later overrulement which arises from the doctrine of "legislative acquiescence", for the legislature has had the error pointed out to it and nonetheless has declined to act. To those not purblindly devoted to that doctrine, however, the dissent marks out judicial error, hopefully, for future judicial correction.

Applying the doctrine of "legislative acquiescence" logically and realistically to the cited decisions of *Cassar* and *Linski*, it should have followed that the legislature had approved the interpretation put upon section 29. *Cassar* was decided on October 3, 1955, over the 16-page dissent of Mr. Justice TALBOT SMITH. In *Knight-Morley Corporation* v. *Employment Security Commission,* 350 Mich 397, decided November 26, 1957, Justice SMITH criticized the *Cassar* doctrine, in the course of a dissenting opinion joined by three other Justices, including Justice BLACK. In *Peaden* v. *Employment Security Commission,* 355 Mich 613, decided April 13, 1959, Justice SMITH again criticized *Cassar,* this time being joined by two other Justices, but not including Justice BLACK. And, finally, in *Linski, supra,* on Novem-

ber 25, 1959, *Cassar* was overruled notwithstanding the legislature's quite obvious acquiescence therein.

During the interval between the decision in *Cassar* and its overrulement by *Linski,* the legislature had legislated with regard to the employment security act (although not with regard to the specific section involved in those cases) four times, by PA 1957, No 287, adopted June 13, 1957; PA 1957, No 311, adopted June 21, 1957; PA 1958, No 230, adopted June 13, 1958; and PA 1959, No 270, adopted October 30, 1959. When the legislature thus acted, according to the theory of the acquiescers, it had before it the *Cassar* opinions, in which seven Justices had interpreted section 29 to bar claimants from benefits and in which one Justice had interpreted the same language not to bar claimants; the *Knight-Morley* opinions, in which the judicial division became four to four; and the *Peaden* opinions, in which three of the Justices reaffirmed their belief that *Cassar* was wrong. Had the legislature thought *Cassar's* majority was wrong, surely it would have changed the pertinent language to make this clear. Instead, in the course of four legislative acts, it left section 29 unchanged. Should this not logically mean that the legislature approved the interpretation of *Cassar's* majority and rejected out of hand the interpretation of the lone dissenter in *Cassar?* Such is the conclusion to which a legislative acquiescer should have been driven, but Justice BLACK nonetheless felt free, in *Linski,* to "legislate" by saying that the section 29 language meant other than the "Court's solemn word"[11] said it meant in *Cassar,* and this after the legislature had four times left untouched the section 29 language while amending other sections of the act.

A doctrine which is so flexible that it bars correction of judicial error in cases like this of Autio,

---

[11] *Mosier* v. *Carney* (1965), 376 Mich 532, 594 (dissenting opinion of BLACK, J.).

wherein the pertinent statutory section has been subject to legislative action only three times[12] since the blatantly erroneous interpretative decision of *Hajduk,* but does not bar such correction in the case of *Van Dorpel,* wherein the pertinent statutory sections had been the subject of such action nine times, is indeed a useful device to reach a desired decision. However, when such antinomous results emerge from a single principle, how does its application help "skilled lawyers, and correspondingly skilled subordinate court judges, [to] 'know the law' "?

Consider next the case of *Wilson* v. *Doehler-Jarvis Division of National Lead Company* (1960), 358 Mich 510. Earlier, in 1954, in *Fowler* v. *Muskegon County,* 340 Mich 522, 526, a case dealing with the workmen's compensation law, this Court unanimously held:

"Under our holding in the *Luyk Case,* [*Luyk* v. *Hertel* (1928), 242 Mich 445] the remedy for all matters connected with compensation must be found in the statute, and our holding in the *Kermott Case,* [*Kermott* v. *Ayer* (1863), 11 Mich 181] is that interest is statutory. It must follow that where the statute does not provide for interest, none can be granted."

In *Wilson,* a majority of five, including Justice BLACK, properly concluded that *Fowler* had been erroneously decided and voted to overrule it.

In the interval between *Fowler* and *Wilson,* the workmen's compensation law had been the subject of legislation three times, by PA 1955, No 122, PA 1955, No 250, and PA 1956, No 195, yet the legislature in no way indicated that the unanimous decision of *Fowler,* which held that workmen's compensation awards bore no interest, was wrong. Surely, then, it must have "acquiesced" in *Fowler's* inter-

12 By PA 1943, No 245; PA 1954, No 175; and PA 1965, No 44.

pretation, and thus insulated that decision from judicial overrulement. But the extreme flexibility of the doctrine of "legislative acquiescence" comes to the rescue of its advocates who, on selective occasion, shrink from its logical imperatives.

Thus it is said that only one unanimous decision interpretive of a statute followed by "legislative acquiescence", silent or otherwise, does not inhibit the Court from later correcting its erroneous interpretation. See Justice BLACK's opinion in *Halfacre, supra.* Although the single-decision exception is bandied about, I find no rationally consistent explanation even suggested for its validity. Either the legislature is presumed to act with all of our advance sheets in hand or it is not. If it is so presumed to act, its acquiescence in a statutory interpretation announced by us in one decision should be as binding as its acquiescence in an interpretation announced in several decisions.

In *Park* v. *Employment Security Commission* (1959), 355 Mich 103, 141, Justice BLACK relied upon two so-called exceptions to the "legislative acquiescence" doctrine ("one interpretive decision isn't binding" and "an interpretive decision in which there is a dissent isn't binding") to escape again the then unwelcome strictures of the doctrine. In *Chrysler Corp.* v. *Smith* (1941), 297 Mich 438 (135 ALR 900), six members of the Court had interpreted language in section 29 of the employment security act to bar claimants from benefits.[13] Despite a persuasive dissent, the legislature in the interval between *Smith* and *Park* amended section 29 no fewer than seven times,[14] but remained, in Justice BLACK's language, "disinterested in correction by its hand of our griev-

---

[13] See footnote 10, *supra.*

[14] PA 1941, No 364; PA 1942 (2d Ex Sess), No 18; PA 1943, No 246; PA 1947, No 360; PA 1951, No 251; PA 1954, No 197; PA 1955, No 281.

ous misinterpretation at that time". 355 Mich 103, 142. The legislature being unwilling to correct the Court's error, despite seven specific opportunities, Justice BLACK then saw no reason why the Court could not do so itself.

See, also, *Thompson* v. *Ogemaw County Board of Road Commissioners* (1959), 357 Mich 482, and *Employment Security Commission* v. *Vulcan Forging Company* (1965), 375 Mich 374, both of which decisions overruled earlier decisions construing statutory language and in both of which decisions Justice BLACK concurred.

The cited cases show that steady judicial legislating, as horrible examples of which Justice BLACK holds up volumes 375 and 376 of our reports, began well before then and with his unqualified support. As a matter of fact in volumes 375 and 376 there are only four cases in which the Court overruled[15] any of its prior decisions: *Felgner* v. *Anderson* (1965), 375 Mich 23, involving a question of common-law assumption of risk and in which Justice BLACK fully concurred; *Employment Security Commission* v. *Vulcan Forging Company* (1965), 375 Mich 374, involving an overrulement of a prior statutory interpretation, and in which Justice BLACK fully concurred; *Mosier* v. *Carney* (1965), 376 Mich 532, in which the Court overruled prior common-law decisions, to a limited extent; and *Bunda* v. *Hardwick* (1965), 376 Mich 640, in which the Court overruled a prior common-law decision.[16]

---

[15] Excluded are cases in which less than a majority of the Court have written, unsuccessfully, to overrule prior decisions which, in their judgment, were erroneous and deserved respectful interment. See, for example, my opinion in *Thom* v. *State Highway Commissioner* (1965), 376 Mich 608, 613.

[16] Although we have confined this discussion in the main to cases involving statutory interpretation, because it is of overrulement of those cases that Justice BLACK now professes to be chary, we need not have done so. for as he indorsed in *Van Dorpel* (pp 149, 150):

We might conclude this discussion of "legislative acquiescence" by quoting from the eminently correct writing of Justice Black in *Park, supra,* pp 145–147, and by hoping that he may yet return to the fold:

"In *Helvering* v. *Hallock,* 309 US 106, 119–121 (60 S Ct 444, 84 L ed 604, 125 ALR 1368), the Court came to grips with today's identical controversy. Having found an earlier rule of statutory construction quite untenable, the court was immediately confronted by a contention that congress, having failed to correct the court's error, had perforce ratified that error and thus had rendered it immune from judicial correction. The court (pp 119–122) said (Justices Roberts and McReynolds dissenting):

" 'We recognize that *stare decisis* embodies an important social policy. It represents an element of continuity in law, and is rooted in the psychologic need to satisfy reasonable expectations. But *stare decisis* is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience.     *     *     *

" 'Nor does want of specific congressional repudiations of the *St. Louis Union Trust Cases*[17] serve as an implied instruction by congress to us not to reconsider, in the light of new experience, whether those decisions, in conjunction with the *Klein Case,*[18] make for dissonance of doctrine. It would require very persuasive circumstances enveloping congressional silence to debar this court from re-examining

"We can see no basic difference between a court overruling its former case law and overruling its former interpretation of a statute. Bad law no less ceases to be bad law, however the accident of its birth."

[17] *Helvering* v. *St. Louis Union Trust Co.,* 296 US 39 (56 S Ct 74, 80 L ed 29, 100 ALR 1239); *Becker* v. *St. Louis Union Trust Co.,* 296 US 48 (56 S Ct 78, 80 L ed 35).—REPORTER.

[18] *Klein* v. *United States,* 283 US 231 (51 S Ct 398, 75 L ed 996).— REPORTER.

its own doctrines. To explain the cause of non-action by congress when congress itself sheds no light is to venture into speculative unrealities. * * * Various considerations of parliamentary tactics and strategy might be suggested as reasons for the inaction of the treasury and of congress, but they would only be sufficient to indicate that we walk on quicksand when we try to find in the absence of corrective legislation a controlling legal principle.

" 'This court, unlike the House of Lords, has from the beginning rejected a doctrine of disability at self-correction. * * * The real problem is whether a principle shall prevail over its later misapplications. Surely we are not bound by reason or by the considerations that underlie *stare decisis* to persevere in distinctions taken in the application of a statute which, on further examination, appear consonant neither with the purposes of the statute nor with this court's own conception of it.'

"Here, then, is our contributed view that *stare decisis* is a discretionary rather than obstinate rule of judicial conduct. Fairly analyzed, it declares that appellate courts should adhere to precedent save only when due consideration leads to firm conviction that the earlier *decision or decisions* (emphasis added) in scrutiny are wrong as well as unjust, and that more rather than less injustice will flow from perpetuation of that which is found erroneous."

In the instant case of Autio, the appeal board made a record-supported finding of fact that plaintiff had suffered the loss of industrial use of his right hand as the result of an injury sustained during his employment by defendant Proksch Construction Company in 1952. The board also found that Proksch had failed to file an accurate report of this loss, having had timely notice thereof, a finding not challenged by Proksch, and the board concluded that the limitational period which is expressly provided in the workmen's compensation act was there-

by tolled.[19]  However, the board held that plaintiff's
claim for compensation for loss of industrial use of
his hand, filed in June, 1961, was barred by the
absolute six-year limitational period imposed judi-
cially by this Court in *Hajduk*.  Having written to
overrule *Hajduk*, I would reverse and remand this
case of Antio for further proceedings.  Costs to
plaintiff.

T. M. KAVANAGH, C. J., and SMITH, O'HARA, and
ADAMS, JJ., concurred with SOURIS, J.

BLACK, J. (*dissenting*).  My views respecting this
now really contagious business of judicial amend-
ment of statutes, effected by retroactively effective
overrulements of long standing, steadily accepted
and unanimously mature interpretations and appli-
cations thereof, came to extended spread upon our
record when *Burns* v. *Van Laan*, 367 Mich 485; *Har-
ris* v. *City of Detroit*, 367 Mich 526; and *Halfacre* v.
*Paragon Bridge & Steel Co.*, 368 Mich 366, were
handed down in 1962.[1]

Since then the key vote of restraint, provided by
Chief Justice CARR in matters of proposed over-
rulement, is no longer here.  In the resultant cir-
cumstances it is—for the time being—useless to
write much more against what I look upon as a judi-
cial disease; a disease which—if not quickly cured—
is bound to destroy the only substance which sus-
tains our judicial system.  That substance is public

---

[19] An inaccurate or incomplete report does not preclude tolling of
the statutory limitational period provided by CL 1948, § 412.15 (Stat
Ann 1950 Rev § 17.165).  See *Wilson* v. *Doehler-Jarvis Division of
National Lead Company* (1958), 353 Mich 363, 372–374, and *Weenink*
v. *Allen Electric & Equipment Co.* (1936), 276 Mich 561.

[1] "This is another case, like recent *Burns* and *Harris*, where one
who claims under a long standing statute would have us rewrite that
statute so that it provide for him exactly what this Court, 30 years
ago and consistently since, has said unanimously it does not provide."
*Halfacre* at pp 381, 382.

confidence in the intellectually steadfast devotion of judges to law as it is written; distinguished from law judges want ordained.

That this Court has legislated, boldly, retroactively and steadily since Chief Justice CARR departed, just as the Court so grievously legislated when the present criticized *Hajduk Case*[2] was signed and released, is neither doubted nor denied. It cannot be denied now. The 375th and 376th Michigan Reports are at large and beyond recall. Such judicial legislation is a naked fact confronting every lawyer, and now most citizens, as all of us go about the necessarily continuous effort to carry on the affairs of society according to the principle of government by law rather than government by men, the edicts of whom are now being stamped *nunc pro tunc.*

The time has come for all lawyers and judges of Michigan to resign themselves to this real, if temporal, usurpation of legislative power. Too, the minority seated here must philosophically accept the situation until our personnel is changed by those inexorables all lifetime seekers of public office have ever feared and always have known.

Agreeing only with what I concede to be rightful damnation of the Court's 32-year-old error (*Hajduk,* 268 Mich 220), and viewing that error as correspondingly identical with the error considered in *Halfacre,*[3] I am moved to stand in favor of legislative correction of the error of *Hajduk.* If that is not to be, then certainly I would stand for wholly prospective overrulement of *Hajduk* and the subsequent cases that are applicatory thereof (the latest being simultaneously and unanimously decided *Babcock*

---

[2] *Hajduk* v. *Revere Copper & Brass, Inc.* (1934), 268 Mich 220.— REPORTER.

[3] In *Hajduk,* as in *Boshaw* v. *J. J. Newberry Co.,* 259 Mich 333 (83 ALR 412) (see *Halfacre* at p 382), "the court just hauled off and enacted an amendment of the statute" (the workmen's compensation law).

v. *General Motors Corporation,* 340 Mich 58 and
*Malleis* v. *Employment Security Commission,* 340
Mich 78). For reasons see *Linkletter* v. *Walker,* 381
US 618 (85 S Ct 1731, 14 L ed 2d 601), *Tehan* v.
*United States, ex rel. Shott,* 382 US 406 (86 S Ct 459,
15 L ed 2d 453), and the new text of American Juris-
prudence (20 Am Jur 2d, Courts, § 234, p 562,
"Change in construction of statute"). *Nunc pro
tunc* law, enacted judicially by the process of over-
ruling unanimous and mature decisions dealing with
standing statutes, is consummately indefensible.
That is why no member of our Court attempts to
defend the practice as he proceeds with it.

One outvoted *re* the above must simply bide the
passage of time, hopeful that this hell-for-breakfast
enterprise of now-for-then legislation by the Court
is transitory and that it will not—because really
it cannot—go on much longer. Even a legislature
could not, consistent with constitutional guaranties,
do what the Court has continued to do in 1965, and
does now in 1966, that is, destroy defensive rights of
substance which, by law, had become vested long
before the date of the legislative attempt. Too, and
no matter what branch of government tries it, the
result is palpably invidious discrimination, effected
in favor of those who seek retrospective overthrow
of laws others of their class have obeyed.

At one time students and citizens, lay and profes-
sional, were taught that everyone is presumed to
know the law, and hence is duty bound to act in
accord therewith. But how may even skilled law-
yers, and correspondingly skilled subordinate court
judges, "know the law" when they are taught that
the law in the books is not law at all, unless upon
litigatory test a bare majority of this very ordinary
Supreme Court happens to like it? Former Justice
Voelker's latest epigram comes to mind at this

point. I quote it from "Laughing Whitefish", p 239 (McGraw-Hill 1965):

"Clapping a black nightshirt on a lawyer and packing him off to the state capital and thenceforth calling him "Mister Justice" makes him no less fallible and uncertain than he was when he was back home drawing five-dollar wills."

I vote to affirm, without an award of costs.

.   .   .   .   .   .   .   .   .

Since the foregoing opinion was submitted to other members of the Court, Justice SOURIS has written 14 additional pages for the case; all devoted to the Court's most disputatious topic, that is, the "now for then" overrulement of unanimous and long standing decisions which have construed and applied legislatively unamended statutes. Beginning riposte, I shall presume that the reader of this postlude has read the 14 pages; also that he perceives clearly that our continuant debate turns upon the specificity of that respect which is due to the constitutional injunction against usurpation, by one branch of the government, of the powers belonging properly to another (Const 1963, art 3, § 2).

The 14 pages, boiled down to actual fact, are aimed at my unconditional indorsement of two opinions Justice VOELKER wrote prior to Justice SOURIS' appointment to the Court. I shall come to them, noting with a modicum of satisfaction that the stinging challenge, delivered in the foregoing opinion, has finally brought this debate out into the open; on our public record distinguished from the claustrally safe smugness of the Court's conference room. The challenge, repeated here as and for a textual start, is this: "That is why no member of our Court attempts to defend the practice [*nunc pro tunc* overruling] as he proceeds with it."

Now really, I would rather have the record made by *my* pen exhibit *my* views, the pertinent subject being "legislative acquiescence," than permit those views to be selectively twisted and turned around by one who, at long last, has been forced to attempt some defense of this mushrooming policy of judicial amendment of standing statutes.[4]   My Brother should know the record that pen has made, pretty well by now, since he opposed it directly in the 3 pointedly divisive cases to which reference was initially made in the opinion above (*Burns,* 367 Mich 485; *Harris,* 367 Mich 526; *Halfacre,* 368 Mich 366).

Here is that record. It cannot be changed now. Too many thousand Michigan lawyers have it booked on their shelves. (*Burns* at p 493, handed down September 10, 1962.)

"The whole argument for and against 'extension of our recent ruling in *Montgomery* v. *Stephan*'[5] adds up to this: Some in today's situation of longtime and steadily unanimous construction of an old statute would 'extend' the power of the judiciary to rewrite that statute so that it means what in *Staal*[6] we said it does not mean. Others—the writer being one—would respect the almost conclusive force of the doctrine of 'legislative acquiescence' where, as here, such acquiescence is proven by many years of unanimous interpretation; the legislature meanwhile remaining acquiescently compliant."

(*Harris* at pp 536 and 537, handed down the same day.)

"This is not a case where, by a nonunanimous and nonmature decision challenged at the bar, a standing statute is shown as having been miscon-

---

[4] See comment with respect to such policy, all unceremonious and with full detail, in *People* v. *Holbrook,* 373 Mich 94, 101; *Currie* v. *Filing,* 375 Mich 440, 457–488; and *Mosier* v. *Carney,* 376 Mich 532, 587–606.

[5] *Montgomery* v. *Stephan,* 359 Mich 33.—REPORTER.

[6] *Staal* v. *Grand Rapids & I. R. Co.,* 57 Mich 239.—REPORTER.

strued and misapplied.   An example of that kind
of judicial blunder was examined and set right in
*Park* v. *Employment Security Commission,* 355 Mich
103.   Here a 70-and-more-year-old statute, which by
its terms created the very right of action this plain-
tiff pleads, has been construed by a long series of
unanimous decisions as denying such right where
the pleader is unable to allege and prove a violation
of what lawyers have come to know as the '2-inch
rule.'   The sole question is whether any 'cogent cir-
cumstances' are disclosed, or may be judicially no-
ticed, which might lead us to depart from that which
was settled so many years ago.   I perceive none,
and so would stand by the general rule which is ap-
plicable to *stare decisis* in the field of statutory con-
struction distinguished from that of the common law.
Such general rule appears in 14 Am Jur, Courts,
§ 66, pp 287, 288.   It was the subject of some little
debate in the *Park Case, supra.*

"Stressed for special emphasis is the fact that we
are asked to overrule unanimous cases construing an
unamended statute; not a case or line of cases an-
nouncing a rule of the common law."

(*Halfacre* at pp 381, 382, 384–388 handed down De-
cember 4, 1962.)

"This is another case, like recent *Burns* and *Har-
ris,* where one who claims under a long-standing stat-
ute would have us rewrite that statute so that it
provide for him exactly what this Court, 30 years
ago and consistently since, has said unanimously
it does not provide.   So comes to public assay the
solemnly recorded and wholly united word of this
Court, given repeatedly upon oath to lawyers, legis-
lators, and judges, that this statutory proviso of
1927 spells out 2 kinds rather than 1 kind of defense
against payment of double compensation to illegally
employed minors."   (pp 381, 382.)

"My Brother SOURIS' proposal to overrule is too
rashly impetuous for me.   After all, the doctrine of

legislative reliance upon and acceptance of judicial interpretation has its value and its place. Moreover, there is present today one only of those 'cogent circumstances' which, in *Sheppard* v. *Michigan National Bank,* 348 Mich 577, 596–603, and *Park* v. *Employment Security Commission,* 355 Mich 103, 138–140, 141–151, led this Court to overrule previous interpretative decisions. In today's instance, unless we are to ignore a constantly employed axiom (that the legislature enacts with the Court's interpretational decisions in one hand as it writes and votes with the other), we have here most of the more or less conclusive reasons why the doctrine of legislative acceptance should be applied. When a legislature, confronted constantly with *unanimous* interpretations like *Boshaw*[7] and its progeny, deliberately re-enacts without change such an interpreted statutory proviso, and does so 8 times running over a period of 30 years, it seems to me that any judge who fails to apply the mentioned doctrine wittingly or unwittingly violates the law (see Cardozo, Nature of the Judicial Process, p 129). I at least want no part of a motion to overrule what indeed was bad law but now is anchored in a regularly readopted statutory provision." (pp 384, 385.)

"With respect to this case of *Halfacre* there are no previous decisions 'in turmoil and conflict.' Instead there are 3 *unanimous* decisions, upon continued strength of which the legislature presumably has legislated 8 times. Thus and today there is affirmatively more than legislative 'silence.' There is frequent legislative action taken in presumptive reliance upon judicial advices long since given with never a dissenting judicial voice. I repeat; never a dissenting judicial voice until these cases of *Halfacre* and *Keller*[8] came along.

"As for the *Park Case* it need only be said, as was said at the time, that the single earlier decision

---

[7] *Boshaw* v. *J. J. Newberry Co.,* 259 Mich 333 (83 ALR 412).—RE-PORTER.

[8] *Keller* v. *Fraser Stamping Company,* 368 Mich 397.—REPORTER.

(*Chrysler Corp.* v. *Smith,* 297 Mich 438 [135 ALR 900]) was the subject of 'sharp and unerring dissent.' It literally forewarned the legislature that when the question came up again it would be due for something more than cozy reaffirmation. The divisive *Chrysler Case* actually remained in chancery, to engage the sporting phrase, until it arrived for re-examination by a court which of necessity was concerned with the need for unitary national construction of like statutes enacted (by most of the States) as a 'part of the legislative scheme for unemployment compensation induced by the provisions of the social security act of 1935' (see footnote 2, p 145, *Unemployment Compensation Commission of Alaska* v. *Aragon,* 329 US 143 [67 S Ct 245, 91 L ed 136]). Here we are confronted by 3—not just 1 —*unanimous* decisions, all matured and fitted to each other, which under the rule of *Department of Conservation* v. *Connor*[9] bid us accept gracefully what the legislature has accepted.

"If *Boshaw* alone stood before us, divisive or otherwise, we then might avail ourselves of the principle that 'one decision construing an act does not approach the dignity of a well settled interpretation' (*United States* v. *Raynor,* 302 US 540, 552 [58 S Ct 353, 82 L ed 413]; quoted and followed in *White* v. *Winchester Country Club,* 315 US 32, 40 [62 S Ct 425, 86 L ed 610]). Such, however, is not today's case. *Boshaw, Blanton*[10], and *Walker*[11], standing unitedly, constitute 'the dignity of a wellsettled interpretation' even though all were patently wrong when written, and there we find the difference between the situation faced in *Park* and that which faces us now. One clearly erroneous interpretation of a statute, attested over unanswerable dissent, has little value as presumptive proof of legislative acceptance thereof. It carries its own flag of independability. Three *unanimous* decisions how-

9 *Department of Conservation* v. *Connor,* 321 Mich 648.—Reporter.
10 *Blanton* v. *Clay Products Co.,* 310 Mich 635.—Reporter.
11 *Walker* v. *Ridley Cleaners, Inc.,* 311 Mich 4.—Reporter.

ever, supporting each other solidly and seemingly accepted for many years by an acquiescent legislature, are quite beyond judicial repudiation when they involve statutes rather than the common law." (pp 386–388.)

To the above consider *People* v. *Holbrook,* 373 Mich 94, 101, into which the following was penned by the writer:

"There is, I fear, an all too easygoing tendency in our midst to overrule long since settled and unanimous but unsatisfactory constructions of standing statutes. Consider *Halfacre, supra;* also *Wallace* v. *Tripp,* 358 Mich 668, 681; *Harris* v. *City of Detroit,* 367 Mich 526, 536–539, and now *In re Carey,* 372 Mich 378, 382.

"I, too, believe that provably errant precedent of statutory construction, especially that which is of *recent* origin and is opposed by vigorous and portentously predictive dissent, should be overruled. See, for instance, the contribution made by the undersigned to *Park* v. *Employment Security Commission,* 355 Mich 103, at 141–151. But, as pointed out in that contribution, *stare decisis* is the rule, and overrulement is the exception. The exception, to justify its application, calls for something more than contemporaneous disfavor."

But Justice Souris says, *today* (*ante* at p 536):

"Thus it is said that only one unanimous decision interpretive of a statute followed by 'legislative acquiescence', silent or otherwise, does not inhibit the Court from later correcting its erroneous interpretation. See Justice Black's opinion in *Halfacre, supra.* Although the single-decision exception is bandied about, I find no rationally consistent explanation even suggested for its validity. Either the legislature is presumed to act with all of our advance sheets in hand or it is not. If it is so presumed to act, its acquiescence in a statutory interpretation

announced by us in one decision should be as binding as its acquiescence in an interpretation announced in several decisions."

So my Brother can find "no rationally consistent explanation even suggested for its validity," referring as he does above to the "one decision" exception to the general rule of legislative acceptance. His search for such "rationally consistent explanation" hardly could have been prolonged, and his memory surely is bad. A scant five months after release of *Halfacre*, *Halfacre* with the writer's definite reference to the "one decision" rule (final paragraph quoted above), Justice Souris joined the writer, along with Justices T. M. Kavanagh and Otis Smith, in the unqualified indorsement of this (*Smith* v. *Lawrence Baking Co.*, 370 Mich 169, 177, 178; prevailing opinion by Justice T. M. Kavanagh):

"We do not lightly overrule settled decisions construing any section of a standing statute. Had the *Wagner Case*[12] represented unanimous views of the Court, we might hesitate resolving to overrule that case since, as Justice Brandeis said so pointedly in *Burnet* v. *Coronado Oil & Gas Co.*, 285 US 393, 406 (52 S Ct 443, 76 L ed 815):

" '*Stare decisis* is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than that it be settled right.'

*Wagner's* dissent, however, simply postponed a final interpretive decision. And even if *Wagner's* majority view had been rendered as unanimous, we would not necessarily be bound thereby since 'one decision construing an act does not approach the dignity of a well-settled interpretation.' See *White* v. *Winchester Country Club*, 315 US 32, 40 (62 S Ct 425, 86 L ed 619), quoting and following *United*

---

12 *Wagner* v. *La Salle Foundry Co.*, 345 Mich 185.—Reporter.

*States* v. *Raynor,* 302 US 540, 552 (58 S Ct 353, 82 L ed 413)."

Upon reading all of Justice Souris' comments upon the citations appearing in the 14 pages aforesaid, it will be found that my Brother's indictment of my record of consistency is founded solely upon my indorsements of Justice Voelker's opinions of *Van Dorpel* v. *Haven-Busch Co.,* 350 Mich 135 and *Wilson* v. *Doehler-Jarvis Division of National Lead Company,* 358 Mich 510. Now *Van Dorpel* was a standoff; four of us standing for overrulement of "one decision," that only. That decision was *Curtis* v. *Hayes Wheel Co.,* 211 Mich 260. And *Wilson* overruled "one decision," that only. That decision was *Fowler* v. *Muskegon County,* 340 Mich 522.

To conclude:

It would seem that, by harking back to *Smith* v. *Lawrence Baking Co.,* we might prosperously resolve our present differences respecting the boundaries of that line, a line I concede is somewhat grayish, which separates pertinently the legislative power from the judicial process. Since the writer along with Justices Souris and Smith indorsed what Justice T. M. Kavanagh wrote into the *Smith Case* per quotation above, the Court might well consider writing a precedential declaration of redevotion to such quoted doctrine. It is founded on the principle, adopted in *Smith* from *Raynor* (302 US 540, 552) and *White* (315 US 32, 40), that "one decision construing an act does not approach the dignity of a well settled interpretation."

Dethmers, J. (*dissenting*). I do not favor acceptance of plaintiff's invitation to overrule *Hajduk* v. *Revere Copper & Brass, Inc.,* 268 Mich 220, and *Ardelian* v. *Ford Motor Co.,* 272 Mich 117. The

holding in those cases was that by analogy to the general statute of limitations, six years must be deemed to be the limit of time and a reasonable one within which a proceeding for compensation should be commenced under the workmen's compensation act; and, further, that the running of that period is not tolled by the employer's failure to file a report of accident as provided by that act in CL 1929, § 8431,* because that tolling applies only to the six-month limitation provided in that same section.

Thirty-two years have passed since the decision in *Hajduk* was announced by this Court, followed the next year in *Ardelian*. The act has been before the legislature and amended many times during that period. No amendment has been added to change the rule of *Hajduk* and *Ardelian*. The conclusion must be one of legislative acquiescence in the statutory interpretation of those two cases. For us now to change the law by overruling them would amount to legislation by judicial fiat. Accordingly, I concur with Mr. Justice BLACK in affirmance.

KELLY, J., concurred with DETHMERS, J.

---

* CLS 1961, § 412.15 (Stat Ann 1960 Rev § 17.165). See, currently, as amended by PA 1965, No 44 (Stat Ann 1965 Cum Supp § 17.165).