MONTANO v GENERAL MOTORS CORPORATION

Docket No. 114429. Submitted July 11, 1990, at Lansing. Decided
    August 10, 1990; approved for publication January 29, 1991, at
    9:00 A.M.

Adolfo Montano, who was employed by General Motors Corpora-
    tion since 1966, stopped working on August 9, 1980, because of
    back pain. From October 21, 1981, to May 24, 1982, he worked
    intermittently. On June 4, 1982, Montano sought workers'
    compensation benefits. A hearing referee awarded him $227 per
    week. The Workers' Compensation Appeal Board affirmed the
    award, but recalculated and increased the benefits to $298.23
    per week on the basis of actual wages of $61.74 earned for five
    hours worked on May 24, 1982. The computed average forty-
    hour weekly wage of $494 was multiplied by two-thirds to
    obtain the weekly benefit amount. General Motors appealed by
    leave granted, claiming that the board incorrectly calculated
    the average weekly wage.

The Court of Appeals held:

1. Subsection 3 of § 371, which provides that, if an employee
    has worked less than thirty-nine weeks in the employment in
    which the employee was injured, the average weekly wage is to
    be based on the total wages earned by the employee divided by
    the total number of weeks actually worked, does not apply to
    the plaintiff because he had worked at General Motors for more
    than thirty-nine weeks at the time of injury.

2. Because the plaintiff's average weekly wage cannot be
    determined justly by applying subsection (2), (3), (4), or (5) of
    § 371, given the factual circumstances in this case, his average
    weekly wage must be computed pursuant to subsection (6),
    which provides that an average weekly wage may be computed
    by dividing the aggregate earnings during the year preceding
    the injury by the number of days worked and multiplying the
    daily wage by the number of work days customary in the
    employment, but not less than five. Remand is required because
    the record is unclear with respect to the number of days

REFERENCES
Am Jur 2d, Workmen's Compensation §§ 368, 369.
See the Index to Annotations under Workers' Compensation.

worked and how many work days were customary. On remand, days when Montano worked less than a full work day are to be considered as days when work was performed.

Reversed and remanded.

BRENNAN, P.J., took no part in the decision of this case.

1. WORKERS' COMPENSATION — AVERAGE WEEKLY WAGE.

Section 371(3) of the Workers' Disability Compensation Act applies only where an employee has not yet worked thirty-nine weeks at the place of employment where the injury occurred; it does not apply to a situation where the employee has worked intermittently for the employer for more than thirty-nine weeks, but less than thirty-nine of the fifty-two weeks immediately preceding the date of injury (MCL 418.371[3]; MSA 17.237[371][3]).

2. WORKERS' COMPENSATION — AVERAGE WEEKLY WAGE.

An employee's average weekly wage for purposes of workers' compensation, if there are special circumstances under which the average weekly wage cannot be determined justly under one of the four other methods of computation provided by the Workers' Disability Compensation Act, may be computed by dividing the aggregate earnings during the year preceding the injury by the number of days worked and multiplying the daily wage by the number of work days customary in the employment, but not less than five; for purposes of computation, days when the employee worked less than a full work day are to be considered as days worked (MCL 418.371[6]; MSA 17.237[371] [6]).

*Davidson, Breen & Doud, P.C.* (by *Richard J. Doud*), for the plaintiff.

*Braun, Kendrick, Finkbeiner, Schafer & Murphy* (by *Bruce L. Dalrymple*), for the defendant.

Before: BRENNAN, P.J., and MACKENZIE and WEAVER, JJ.

PER CURIAM. Defendant General Motors Corporation appeals by leave granted the December 12, 1988, opinion and order of the Workers' Compensation Appeal Board.

Plaintiff began his employment with defendant

in August of 1966. In August of 1980, he injured his back while on vacation. He returned to work from vacation and worked until August 9, 1980, at which time he stopped working because of back pain. Plaintiff returned to work on October 21, 1981, but worked only intermittently. He earned $286.39 during the week ending October 25, 1981, $479.62 for the week ending November 1, 1981, and $95.93 for the week ending November 18, 1981. He left work again on November 5, 1981, because of back pain and returned to work just briefly on May 24, 1982, working five hours and earning $61.74.

On June 4, 1982, plaintiff filed a claim for workers' compensation benefits, alleging a back disability. The hearing referee awarded plaintiff benefits in the amount of $227 per week until further order. On appeal, the board affirmed the award, but recalculated and increased the benefits to $298.23 per week. We reverse.

GM does not dispute plaintiff's disability. The only question on appeal is the correct calculation of plaintiff's average weekly wage upon which his award was based. The statute in dispute is § 371 of the Workers' Disability Compensation Act, MCL 418.371; MSA 17.237 (371), which provides:

> (1) The weekly loss in wages referred to in this act shall consist of the percentage of the average weekly earnings of the injured employee computed according to this section as fairly represents the proportionate extent of the impairment of the employee's earning capacity in the employments covered by this act in which the employee was working at the time of the personal injury. The weekly loss in wages shall be fixed as of the time of the personal injury, and determined considering the nature and extent of the personal injury. The compensation payable, when added to the employ-

ee's wage earning capacity after the personal injury in the same or other employments, shall not exceed the employee's average weekly earnings at the time of the injury.

(2) As used in this act, "average weekly wage" means the weekly wage earned by the employee at the time of the employee's injury in all employment, inclusive of overtime, premium pay, and cost of living adjustment, and exclusive of any fringe or other benefits which continue during disability. Any fringe or other benefit which does not continue during the disability shall be included for purposes of determining an employee's average weekly wage to the extent that the inclusion of the fringe or other benefit will not result in a weekly benefit amount which is greater than $\frac{2}{3}$ of the state average weekly wage at the time of injury. The average weekly wage shall be determined by computing the total wages paid in the highest paid 39 weeks of the 52 weeks immediately preceding the date of injury, and dividing by 39.

(3) If the employee worked less than 39 weeks in the employment in which the employee was injured, the average weekly wage shall be based upon the total wages earned by the employee divided by the total number of weeks actually worked. For purposes of this subsection, only those weeks in which work is performed shall be considered in computing the total wages earned and the number of weeks actually worked.

(4) If an employee sustains a compensable injury before completing his or her first work week, the average weekly wage shall be calculated by determining the number of hours of work per week contracted for by that employee multiplied by the employee's hourly rate, or the weekly salary contracted for by the employee.

(5) If the hourly earning of the employee cannot be ascertained, or if the pay has not been designated for the work required, the wage, for the purpose of calculating compensation, shall be taken to be the usual wage for similar services if the services are rendered by paid employees.

(6) If there are special circumstances under which the average weekly wage cannot justly be determined by applying subsections (2) to (5), an average weekly wage may be computed by dividing the aggregate earnings during the year before the injury by the number of days when work was performed and multiplying that daily wage by the number of working days customary in the employment, but not less than 5.

(7) The average weekly wage as determined under this section shall be rounded to the nearest dollar.

In determining plaintiff's average weekly wage, the board stated that it was applying § 371(3), but for some unknown reason based its calculation only on the five hours plaintiff worked in May 1982. The board took plaintiff's actual wage of $61.74 for the five hours or 0.125 of a week plaintiff worked and calculated that plaintiff would have had an average weekly wage of $493.92 if he had worked forty hours. The board then rounded the figure to $494 pursuant to § 371(7). The board calculated two-thirds of $494 pursuant to § 372(2) and found that plaintiff should receive $298.23.

It is GM's position that the sections of the statute must be read together, that subsection (3) applies and that the statutory reference to "less than 39 weeks" in subsection (3) can only be a reference to the "39 weeks of the 52 weeks immediately preceding the date of the injury" mentioned in subsection (2). GM therefore argues that the plain language of MCL 418.371(3); MSA 17.237(371)(3) mandates that the board compute plaintiff's average weekly wage by dividing the total wages earned in the fifty-two weeks immediately preceding the date of the injury by the total number of weeks actually worked during the preceding fifty-two weeks. This would include the

three weeks plaintiff worked in October and November of 1981. GM contends that the board erred in calculating plaintiff's average weekly wage by considering only the last five hours worked by plaintiff. In fact, defendant would exclude plaintiff's wages earned on May 24, 1982, because plaintiff only worked part of a day and because that day did not precede the date of the injury.

Plaintiff on the other hand argues that his average weekly wage was properly determined under § 371(3) without reference to the fifty-two weeks immediately preceding his injury because subsection (3) makes no reference to the fifty-two-week period.

There is no case law to aid us in interpreting this section. Nevertheless, we have the rules of statutory construction to guide us. Some helpful rules were set forth in *Wills v Iron Co Bd of Canvassers,* 183 Mich App 797, 801-802; 455 NW2d 405 (1990):

> Where a statute is clear and unambiguous, judicial construction or interpretation is precluded. However, if construction is warranted, this Court is obliged to determine and give effect to the intention of the Legislature and assign words their ordinary, normally accepted meaning. When determining legislative intent, statutory language should be given a reasonable construction considering its purpose and the object sought to be accomplished. An act must be read in its entirety, giving due consideration to all sections so as to produce, if possible, a harmonious and consistent enactment of the whole. Finally, statutes are to be construed to avoid absurd or unreasonable consequences. [Citations omitted.]

Turning to the statute in issue, we reject defendant's argument that the "39 weeks" in subsection (3) refers to "39 weeks of the 52 weeks immedi-

ately preceding the date of the injury" referred to in subsection (2). We believe the clear and unambiguous meaning of subsection (3) refers to a situation where an employee has not yet worked thirty-nine weeks at the place of employment where he was injured. Moreover, we reject plaintiff's contention that the board properly applied subsection (3) to the present situation. Although plaintiff had not worked more than thirty-nine weeks for defendant in the year preceding his injury, he clearly had worked for defendant more than thirty-nine weeks at the time of his injury. Since subsection (3) applies only to employees who have not yet worked thirty-nine weeks for their employer at the time they are injured, subsection (3) is inapplicable to the present situation.

We believe subsection (6) applies here because none of the other subsections are applicable and because plaintiff's "average weekly wage cannot be determined justly by applying subsections (2) to (5)." Plaintiff's average weekly wage should have been computed by dividing the aggregate earnings during the year before the injury (including the wages plaintiff earned in October and November of 1981 and May of 1982) by the total number of days when work was performed and multiplying that daily wage by the number of working days customary in the employment, but not less than five.

Because it is not clear from the record how many days plaintiff worked in October and November and how many days are customary in the employment, remand is necessary. We note that even those days when plaintiff did not work a full day should be considered in determining the "number of days when work was performed." We believe the language is clear. The Legislature could have included language regarding days worked where only a portion of the day is worked,

but did not do so. Although this result is disadvantageous to plaintiff, no one but the Legislature may remedy its oversight, assuming it was one. *Lake Carriers Ass'n v Director of Natural Resources,* 407 Mich 424; 286 NW2d 416 (1979). *Autio v Proksch Construction Co,* 377 Mich 517; 141 NW2d 81 (1966).

The board's order is reversed and the case is remanded for a recalculation of plaintiff's average weekly wage consistent with this opinion. We do not retain jurisdiction.